**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**David A. STURMAN (90–3147); Ralph L. Levine (90–3148); Reuben Sturman (90–3151); and Melvin Kaminsky (90–3750), Defendants–Appellants.**

Nos. 90–3147, 90–3148, 90–3151 and 90–3750.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1991.

Decided Oct. 24, 1991.

Rehearing and Rehearing En Banc Denied Jan. 8, 1992.

Bernard A. Smith, Office of U.S. Atty., Stephen H. Jigger, Office of U.S. Atty., Organized Crime Strike Force Unit, Cleveland, Ohio, Frank J. Marine (argued and briefed), U.S. Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellee.

Arthur Wells, Jr., Berkeley, Cal., Alan M. Caplan (argued and briefed), Bushnell, Caplan & Fielding, San Francisco, Cal., for defendant-appellant David A. Sturman.

Paul J. Cambria, Jr., Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y. (argued and briefed), for defendants-appellants Ralph L. Levine and Melvin Kaminsky.

Jeremy A. Rosenbaum, J. Michael Murray (argued and briefed), Berkman, Gordon, Murray & Palda, Cleveland, Ohio, for defendant-appellant Reuben Sturman.

Before KENNEDY and MILBURN, Circuit Judges, and WILHOIT, District Judge.*

KENNEDY, Circuit Judge.

## I. STATEMENT OF FACTS

On June 25, 1987, the defendants were charged with one count of conspiring to defraud the United States by impeding governmental functions. Reuben Sturman was also indicted on counts of attempted tax evasion, filing false income tax returns, willfully failing to maintain records and file reports, and one count of endeavoring to obstruct justice. Following their conviction, Reuben Sturman was sentenced to 10 years imprisonment, fined approximately $2.5 million, and ordered to pay prosecution costs. The other defendants were sentenced to shorter terms and fined lesser amounts.

Reuben Sturman engaged in the production, sale, and distribution of sexually explicit books and tapes. Some of the individual businesses ran "peep booths" which played sexually explicit videos. David Sturman, Reuben Sturman's son, was responsible for his father's businesses in the San Francisco area. Ralph Levine ran the businesses in Nevada and Melvin Kaminsky managed Reuben Sturman's principal business, Sovereign News Company.

The defendants, led by Reuben Sturman, created 150 domestic corporations beginning in the 1960s. Reuben Sturman also formed five foreign corporations in countries following strict "corporate secrecy" policies. The testimony of numerous witnesses revealed that the named shareholders and nominees in these corporations were often fictitious. In other cases, real people were listed as shareholders, but their names and signatures had been used without their knowledge or permission. The prosecution proved that, in fact, Reuben Sturman was the beneficial owner of most of the corporations.

The defendants used the corporations to conceal income. They transferred money between corporations in ways that made tracing income and expenses difficult. The defendants also skimmed money from some of the adult entertainment businesses. This money was then used to pay personal expenses or was transferred and deposited in Swiss bank accounts. These bank ac-

---

* The Honorable Henry R. Wilhoit, Jr., United States District Court for the Eastern District of Kentucky, sitting by designation.

counts were opened in 1974, as stated by Reuben Sturman, to "conceal his money" and "avoid taxes." (Testimony of Walter Butti, Alfred Graf and James Olsafsky.) The transfers to Switzerland were accomplished through a series of transactions involving both the foreign and domestic corporations.

Reuben Sturman took a variety of steps to conceal his activities from the authorities. A federal investigation in 1975 forced him to begin hiding documents. In 1979, following the issuance of subpoenas calling for various records, Reuben Sturman destroyed or hid many of the requested records. He took similar actions in response to a 1982 grand jury subpoena.

Tax records filed during the period of the conspiracy contained numerous false statements and inaccuracies. Reuben Sturman failed to report his ownership in the domestic and foreign corporations or his signature authority over foreign bank accounts. His tax returns for 1978–1982 underreported $2,735,713 in individual income. The other defendants also failed to report their signature authority in foreign accounts.

## II. DENIAL OF DEFENDANTS' MOTIONS TO DISMISS COUNT I

All defendants filed motions to dismiss Count I which charged that the defendants,

did unlawfully, knowingly and willfully conspire, combine, confederate and agree together and with each other to defraud the United States of America by hampering, hindering, impeding, impairing, obstructing and defeating the lawful Governmental functions of the Internal Revenue Service of the Treasury Department of the United States in the ascertainment, computation, assessment and collection of income taxes [in violation of 18 U.S.C. § 371.]

Defendants based their motions on this Court's decision in *United States v. Minarik*, 875 F.2d 1186 (6th Cir.1989), which held that conspiracy to commit an offense and conspiracy to defraud, under 18 U.S.C. § 371, were two separate crimes. The District Court denied the defendants' motions

holding that *Minarik* was inapplicable to the conspiracy charged in this case. We agree.

Count I of the indictment is based on 18 U.S.C. § 371 (1984) which states,

[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Count I charges the defendants under the defraud clause of the statute. This type of conspiracy is generally known as a "Klein" conspiracy. *See United States v. Klein*, 247 F.2d 908 (2d Cir.1957), *cert. denied*, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). In *Klein*, several persons were charged with defrauding the United States by impeding and obstructing the lawful functions of the Treasury Department and concealing the nature of their business activities and source of income. As in this case, "the indictment [was] framed to make a general charge of impeding and obstructing the Treasury Department ... [with more specific allegations] as particular instances, rather than as substitute and complete allegations of the substantive crime itself." *Klein*, 247 F.2d at 916. The conspiracy in *Klein* also involved a large number of domestic and foreign corporations, and multiple violations of the tax laws.

In *Minarik*, 875 F.2d at 1186, this Court addressed the two clauses of the conspiracy statute. One of the defendants in that case, Aline Campbell, had been issued three tax assessments for a total demand of $108,788.15. Campbell responded that she did not owe a tax. Shortly after the tax assessment, Campbell, together with her friend Robert Minarik, arranged for the sale of a house Campbell owned. The $47,500 payment was made in the form of seven checks for $4,900 and one check for $3,732.18. The buyer assumed a mortgage for the balance. When Campbell cashed two of the checks at the same bank, the IRS was contacted. The IRS agents

obtained a warrant to search Campbell's car because she had attempted to avoid the Bank Secrecy Act which requires the filing of an IRS report for any transaction over $10,000. The defendants were charged with conspiring to defraud the government by concealing the nature of and income from Campbell's business affairs in violation of 18 U.S.C. § 371. The indictment did not make clear what function of the Treasury Department the defendants were impeding and the government changed its theory of the case throughout the indictment process and trial. The defendants could have been charged properly under section 7206(4) of the Internal Revenue Code which makes it a felony to conceal any goods or commodities on which a tax or levy has been imposed.

This Court held that defendants could not be charged under the defraud clause but convicted on evidence which supports the offense clause. In *Minarik*, the Court interpreted section 371 finding:

the "offense" and "defraud" clauses as applied to the facts of this case are mutually exclusive, and the facts proved constitute only a conspiracy under the offense clause to violate 26 U.S.C. § 7206(4)....

875 F.2d at 1187. The Court concluded that when Congress creates a specific offense out of conduct which was previously criminalized only if it took the shape of a conspiracy to defraud the United States, the court should require that a criminal conspiracy regarding that conduct be brought exclusively under the offense clause. *Id.* at 1194. Thus, if the offense clause covers an act or offense, a person cannot alternatively be convicted under the broad defraud clause. This rule comes into effect most often when a Congressional statute closely defines the duties a defendant is accused of violating. The Court reasoned that requiring an indictment to charge a defendant with conspiracy to com-

mit a specific crime reduces the uncertainty in a case by defining up front the alleged crime.

■ Defendants here argue that the conduct alleged in Count I amounted to a violation of either 26 U.S.C. §§ 7206(1) or 7206(4) and that the conspiracy should have been charged under the offense clause of section 371. We disagree. The conspiracy alleged and proven here was broader than a violation of a specific statute.

This Court, in *Minarik*, noted that the holding in the case referred to the offense and defraud clauses "as applied to the facts in this case." 875 F.2d at 1187. The facts in *Minarik* and this case are distinguishable. Reuben Sturman set up a complex system of foreign and domestic organizations, transactions among the corporations, and foreign bank accounts to prevent the IRS from performing its auditing and assessment functions. Evidence shows that he committed a wide variety of income tax violations and engaged in numerous acts to conceal income. This large conspiracy involved many events which were intended to make the IRS impotent. No provision of the Tax Code covers the totality and scope of the conspiracy. This was not a conspiracy to violate specific provisions of the Tax Code but one to prevent the IRS from ever being able to enforce the Code against the defendants. Only the defraud clause can adequately cover all the nuances of a conspiracy of the magnitude this case addresses. As the Supreme Court had held with respect to specific violations within a conspiracy, "[t]he fact that the events include the filing of false statements does not, in and of itself, make the conspiracy-to-defraud clause of § 371 unavailable to the prosecution." *Dennis v. United States*, 384 U.S. 855, 863–64, 86 S.Ct. 1840, 1845–46, 16 L.Ed.2d 973 (1966). In this case, the prosecution was entitled to indict the defendants under the defraud clause.[1]

1. The government's brief cites four cases in which the Sixth Circuit has affirmed convictions based on the defraud clause. These defendants could also have been charged based on the offense clause. These decisions lend support to limiting *Minarik* to its facts. *See United States v. Jerkins*, 871 F.2d 598 (6th Cir.1989); *United States v. Shermetaro*, 625 F.2d 104 (6th Cir. 1980); *United States v. Fruehauf Corp.*, 577 F.2d 1038 (6th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Levinson*, 405 F.2d 971 (6th Cir.1968), *cert.*

The broad nature of the conspiracy, and the associated violation of several statutes, distinguishes this case from *Minarik*. In this case, the alleged conduct violates several statutes. A "conspiracy to defraud" charge most clearly covers the conduct when viewed in its entirety.

The chief concern of this Court in *Minarik* was that the government, by constantly changing the prosecution theory, never adequately informed the defendant of the charges against him. In this case, no such changing theories have emerged. The prosecution has presented the case clearly and no confusion as to the charges is evident.

### III. INSUFFICIENT EVIDENCE CLAIMS OF DAVID STURMAN AND RALPH LEVINE

#### A. David A. Sturman

David Sturman asserts that the prosecution produced insufficient evidence to support his conviction. He specifically points to a lack of proof evidencing his participation in a conspiracy or of the formation of a willful conspiracy.

■ A conviction withstands a sufficiency of evidence challenge if

> after viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in the government's favor, the evidence is sufficient to justify a reasonable juror's conclusion that each element of the offense has been established beyond a reasonable doubt....

*United States v. Poulos*, 895 F.2d 1113, 1117 (6th Cir.1990) (citations omitted). When attempting to prove an individual's participation in a conspiracy, the prosecution must first establish that a conspiracy existed. This Court stated the elements necessary for proof of conspiracy under 18 U.S.C. § 371 in *United States v. Meyers*, 646 F.2d 1142 (6th Cir.1981):

> The essential elements of conspiracy are: (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged;

(2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.

*Id.* at 1143–44. The existence of a conspiracy can be inferred from circumstantial evidence. *United States v. Levinson*, 405 F.2d 971 (6th Cir.1968), *cert. denied*, 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744 (1969). Once a conspiracy has been established, the prosecution need only produce slight evidence to implicate the defendant. *Poulos*, 895 F.2d at 1117.

■ Extensive evidence was submitted at trial to establish the existence of a conspiracy. Evidence against David Sturman included his admission that he had opened two Swiss bank accounts under assumed names, his signature authority over 20 additional accounts under the names of various fictitious persons, his directorship at one of the corporations used to channel money from other businesses, and his failure to report his signature authority over Swiss accounts as required by law. All of these activities were interrelated to his father's overall activities. His father's secretary and accountant were also active in the overall scheme. This evidence is adequate to prove the existence of a conspiracy. The testimony of various witnesses, the signature cards with David Sturman's name, and his own admissions implicate the defendant. The jury reasonably could have inferred from the evidence that David Sturman knew of the conspiracy, willfully became a member of the conspiracy, and participated in the concealment of assets from the IRS. This Court finds that a reasonable jury could find the evidence adequate to implicate the defendant and support his conviction and therefore affirms the District Court findings.

#### B. Ralph L. Levine

■ Levine argues there is insufficient evidence of any agreement on his part to

*denied*, 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744 (1969).

become a member of the conspiracy, and that even if he did so agree, it was to a different conspiracy then the one alleged. For this Court to sustain a conviction of conspiracy,

> the defendant must know the purpose of the conspiracy, but not necessarily the full scope thereof, the detailed plans, operation, membership, or even the purpose of other members in the conspiracy.

*United States v. Shermetaro,* 625 F.2d 104, 108 (6th Cir.1980). Further, the Court is bound by "all reasonable inferences and credibility choices in support of the jury's verdict." *United States v. Hughes,* 895 F.2d 1135, 1140 (6th Cir.1990) (quoting *United States v. Stull,* 743 F.2d 439, 442 (6th Cir.1984)).

As Levine concedes, Reuben Sturman conspired to defraud the government by creating numerous and complex means of concealing assets and income. Levine, who acted as a partner to Sturman, ran the Nevada businesses. An employee, Jack Marcum, testified that at least $70,000 in cash from the Nevada businesses went unrecorded every month. Levine failed to report the existence or use of this money and therefore furthered the purpose of the conspiracy. His signature authority and power of attorney on Swiss accounts, his failure to report such authority, and the signing of aliases on the signature cards provides further evidence from which the jury could imply willing membership. Levine argues that any finding that he participated in the conspiracy can only be based on inference piled on inference in violation of *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943). This Court finds the evidence presented adequate to find participation in a conspiracy even without multiplying inferences. A reasonable jury could find the evidence sufficient to convict the defendant.

## IV. SINGLE VERSUS MULTIPLE CONSPIRACIES AND JOINDER OF CLAIMS

Levine and David Sturman both contend that the evidence establishes the existence of multiple conspiracies rather than only one large conspiracy. Levine also asserts that the District Court abused its discretion when it denied his motion for severance. The motion, based on Federal Rules of Criminal Procedure 14, claimed prejudice by the joinder of defendants at trial. Defendants have failed to preserve either of these issues.

At the end of trial, both Levine and David Sturman requested jury instructions on multiple conspiracies. The district judge declined to give the multiple conspiracy instruction and several other instructions requested by the defense. After the jury was instructed, Reuben Sturman's attorney, J. Michael Murray, raised a general objection "to the failure with respect to any of the jury instructions that have not been included." He then mentioned several specific instructions, by number, which he believed expressed a correct statement of law and were necessary to present a balanced statement of the case to the jury and potential defenses. Mr. Murray did not mention, even by number, the instruction addressing multiple conspiracies and gave no distinct reasons for objecting to the court's failure to include the multiple conspiracy instruction.

A general objection to district court jury instructions is insufficient to preserve a specific claim. Fed.R.Crim.P. 30 states:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

This rule clearly indicates that a specific objection must be made with regard to charge requests. *See United States v. Friedman,* 854 F.2d 535, 555 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); *United States v. Martinez,* 776 F.2d 1481, 1484 (10th Cir. 1985) (holding that the objection "both instructions fit this case and should be given" is inadequate to preserve issue). The defendants in this case have failed to pre-

serve the issue of multiple conspiracies for appeal.

 Levine's contention that the District Court abused its discretion by denying his motion for severance is also without merit. Levine made several motions based on Rule 14 of the Federal Rules of Criminal Procedure. Rule 14 allows the trial court to grant a severance if it appears that a defendant is prejudiced by a joinder of offenses or defendants. Levine argued that the evidence against the co-defendants unfairly accrued to him and that no cautionary instruction could eradicate that accrual.

Levine has failed to preserve this claim for appeal. This Court has held that "a severance motion will be deemed waived if it is not renewed at the end of the evidence." *United States v. Swift*, 809 F.2d 320, 323 (6th Cir.1987). Although Levine argued that he was entitled to a judgment of acquittal under Federal Rule of Criminal Procedure 29 because of the prosecution's failure to prove one conspiracy, he did not renew his motion for severance.

 Even if Levine had preserved this claim, it is without merit. The Supreme Court articulated a test for denial of severance motions in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Succinctly, the test is whether the error had substantial influence on the judgment. *Id.* at 765, 66 S.Ct. at 1248. A denial of a severance motion is reversed only if there is abuse of discretion by the trial court. *United States v. Bibby*, 752 F.2d 1116 (6th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986). No abuse of discretion is apparent in this case. The District Court made repeated instructions to the jury to consider the evidence against each defendant separately. A jury is presumed capable of sorting and considering evidence separately. *Swift*, 809 F.2d at 323. In addition, much of the evidence in the trial would have been admissible if Levine had a separate trial.

This Court finds no basis for reversing the District Court's denial of severance.

## V. WILLFULNESS ELEMENT OF COUNTS XII–XV

 Counts XII–XV charged Reuben Sturman with willfully failing to maintain records and file reports as required by 31 U.S.C. § 5314 (1982). The statute governs records and reports on foreign financial agency transactions. The government based these counts on Reuben Sturman's failure to file Form 90–22.1. This form must be filed by any person who has an interest in or signature over a foreign bank account with a balance in excess of a set dollar amount. Reuben Sturman objects to his conviction on these counts because he believes that the prosecution failed to show that he was aware of the Form 90–22.1 filing requirements.

In *Cheek v. United States*, —— U.S. ——, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991), the Supreme Court established that the test for statutory willfulness is "voluntary, intentional violation of a known legal duty." Willfulness may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information. *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).[2] Other circuit courts have concluded that willfulness can be inferred from a conscious effort to avoid learning about reporting requirements. *United States v. Bank of New England, N.A.*, 821 F.2d 844, 855 (1st Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987).

The evidence in this case establishes that Reuben Sturman did take actions to conceal his assets from the federal government. He concealed his signature authority, his interests in various transactions, and his interest in corporations transferring cash to foreign banks. This conduct could be adequate for the jury to infer willfulness

---

**2.** The defendant claims that *Spies* is irrelevant since it deals with specific charges of tax evasion rather than conspiracy to defraud the government. We find that the case relevant. *Spies* did involve an indictment which contained a single felony charge of willfully attempting to defeat and evade a tax. However, willful failure to file a return and willful failure to pay taxes were cited as means to the end. 317 U.S. at 494, 63 S.Ct. at 366.

on the part of the defendant. In addition, the defendant did admit knowledge of and failure to answer a question concerning signature authority at foreign banks on Schedule B of his income tax return. This section of the return refers taxpayers to a booklet that further outlines their responsibilities for reporting foreign bank transactions. This booklet discusses the duty to file Form 90–22.1. These resources indicate that the defendant could have learned of the additional requirements quite easily. It is reasonable to assume that a person who has foreign bank accounts would read the information specified by the government in tax forms. Evidence of acts to conceal income and financial information, combined with the defendant's failure to pursue knowledge of further reporting requirements as suggested on Schedule B, provide a sufficient basis to establish willfulness on the part of the defendant.

## VI. OBJECTIONS TO PROSECUTORIAL SUMMATION

■ Defendant Levine contends that statements by the prosecutor in his rebuttal argument deprived him of a fair trial and that the District Court abused its discretion when it denied his motion for mistrial based on the statements. Levine's attorney argued in summation that the prosecution had failed to produce any evidence which linked Levine to the purchase, sale, transfer of funds into or out of Swiss accounts. In response, the prosecution referred to cashiers checks from Nevada banks which had been deposited in Switzerland. The inference was that these checks established that money from sales in Nevada, where Levine managed Sturman's businesses, had been moved into foreign banks. Levine asserts that since no direct or concrete evidence was produced to link him with those foreign bank transactions, the prosecutor's remarks were prejudicial and improperly suggested an unsupported inference.

Alleged prosecutorial prejudicial or biased remarks will warrant reversal only if the comments have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Moreno,* 899 F.2d 465, 468 (6th Cir.1990) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)). In this case, evidence did exist that suggested Levine had participated in the skimming and transfer of money from United States corporations to Swiss accounts. This evidence included Levine's signature on signature cards and the testimony of various witnesses. This evidence is adequate to support any inference by the jury that deposits to the Swiss accounts from Nevada reflects proceeds from the skimming of income in which Levine was involved. In addition, the jury was instructed that the arguments of the attorneys should be dismissed to the extent they were unsupported by the evidence. This Court finds Levine's guilt supported by the evidence and that the prosecution's summary argument did not "infect[ ] the trial with unfairness."

## VII. ALLEGED BIAS OF A JUROR

■ Levine contends that he has been denied the right to a fair trial because the District Court failed to accord the defendant a hearing based on the defendant's claims of juror bias. This Court has held that,

[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion.

*United States v. Shackleford,* 777 F.2d 1141, 1145 (6th Cir.1985), *cert. denied,* 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986). The Supreme Court, in *Remmer v. United States,* 347 U.S. 227, 230, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), required a hearing in cases of jury bias to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." [3]

---

**3.** *Remmer* involved a case of jury tampering by outside influences. After the completion of the

During the course of this trial, Juror Olenik approached Judge White with concerns related to Levine's drawing pictures of the jurors during the trial. She advised the judge that some of the other jurors were also uncomfortable. When questioned, several of the jurors admitted being anxious over the drawings and their appropriateness. The judge assured the jurors that drawings by the defendants were permitted. He also told Juror Olenik that the drawings did not resemble any of the jurors. The judge asked each juror whether the incident would have any impact on their ability to remain fair and impartial. All the jurors responded negatively. Although the judge asked the jurors the questions originally requested by defense counsel, he denied defense requests for additional questioning. He did not allow the defense attorneys to ask any questions directly to the jury.

This Court has articulated four points to be considered when determining jury impartiality. *United States v. Zelinka*, 862 F.2d 92 (6th Cir.1988). First, a hearing must be held. Second, the defendant bears the burden of proving bias. Third, no presumption of prejudice arises from the "contact." And finally, fourth, juror testimony at the hearing to determine juror bias is not inherently suspect. Although no case since *Remmer* has addressed the right of the defense to question jurors, such questioning would normally be important to the defense in its effort to prove bias. However, when the questioning of the jurors occurs during the trial it is preferable it be done by the judge. Jurors may resent being questioned directly by counsel.

Even if direct questioning of the jurors by the defense is required by *Remmer*, the absence of such questioning in this case is harmless error. Each juror was asked separately what had occurred and its impact on them. The juror who approached the court about the issue appeared mainly concerned with whether the defendant's drawings were permissible. The court adequately assured the jurors that Levine had done nothing improper. The judge was justified in taking at face value the jurors' assurances of impartiality. This Court finds that any deficiencies in the juror bias hearing were harmless error and the defendant was not entitled to a mistrial.

## VIII. ADEQUACY OF 18 U.S.C. § 1503 ALLEGATION

Count XVI of the indictment charged Reuben Sturman with obstruction of justice in violation of 18 U.S.C. § 1503.[4] The count alleged that Reuben Sturman concealed or suppressed documents of various corporations which had been subpoenaed by the grand jury. Reuben Sturman argues that the charge did not provide sufficient information on the specific documents alleged destroyed or the particular corporations or subpoenas involved.

 The Supreme Court has held that the fifth amendment indictment clause and the sixth amendment notice clause, as protected in Federal Rule of Criminal Procedure 7(c), require an inquiry to determine:

first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,' " and, secondly, " 'in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' "

---

trial, it was revealed that a juror had been approached by someone who suggested it would be profitable to bring in a verdict favorable to the petitioner. The judge had ordered an investigation at the time the juror had reported the incident, decided the offer had been made in jest, and never notified the defense of the incident. The defense learned of the occurrence after the trial in the newspaper. 347 U.S. at 228, 74 S.Ct. at 450.

4. 18 U.S.C. § 1503 (1984) states, in relevant part, that whoever,

corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

*Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962) (citations omitted). Furnishing the defendant with a bill of particulars fails to save deficiencies in the indictment. *Id.* at 769–70, 82 S.Ct. at 1050. This Court, when reviewing the sufficiency of an indictment, must ask whether the omission complained of deprives the defendant of one of the protections which the guaranty of a grand jury indictment was meant to ensure. *Id.* at 763, 82 S.Ct. at 1046.

█ Count XVI of the indictment charges Reuben Sturman with endeavoring to obstruct justice in January 1982 in the United States District Court by destroying, concealing, and suppressing records of various corporations. The indictment clearly establishes the date and manner of the offense as well as the administrative body affected by the actions. This information sets forth all the elements necessary to establish and give a general description of the offense. Any technical deficiencies were harmless error since the indictment sufficiently apprised the defendant of the charges against him to enable him to prepare a response. *See United States v. Weiss*, 491 F.2d 460 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974). The District Court correctly dismissed Reuben Sturman's motion to dismiss the charge.

### IX. ADMISSION OF JAMES OLSAFSKY'S TESTIMONY

█ James Olsafsky was the government's key witness with respect to Count XVI of the indictment charging Reuben Sturman with destroying or concealing subpoenaed documents. Olsafsky handled the bookkeeping for fifteen to twenty of the stores owned by Reuben Sturman. Olsafsky testified that he was directed by Reuben Sturman to destroy numerous documents subject to a grand jury subpoena. The documents ordered destroyed included all records of corporations then in existence which contained the name of a living person. Records of defunct corporations were not destroyed. During examination of Olsafsky, the government requested that he flip through the file of a defunct corporation and identify what records he would have destroyed seven years previously if he had been asked by Reuben Sturman. The defense asserts that it is prejudicial error to allow a key witness to speculate on what documents he might have destroyed, and to bolster witness testimony with a demonstration of document destruction. They assert they are denied the right to cross-examine since the testimony was not based in fact.

District court decisions relating to the admission of testimony may not be reversed unless the defendant proves abuse of discretion and specific prejudice. Admissibility of evidence is measured by weighing the probative value of the evidence against its prejudicial value. *United States v. Zipkin*, 729 F.2d 384, 389–90 (6th Cir.1984). The testimony to which Reuben Sturman objects merely serves to identify the types of documents Olsafsky was ordered to destroy. Since Olsafsky did in fact destroy documents, the use of a similar file to identify the type of destroyed documents is based on personal knowledge. The court was within its discretion in permitting the demonstration. Any prejudice would be outweighed by the probative value of Olsafsky's identification of the types of documents Reuben Sturman ordered destroyed.

### X. ADMISSION OF EXPERT TESTIMONY

█ Reuben Sturman objects to the summary testimony of Internal Revenue Agent James Morrow who was involved in the investigation of this case. Reuben Sturman asserts that Morrow's summary testimony was in fact a final argument to the jury, recounting unproven and contested facts. The defendant argues that permitting Morrow's testimony constitutes prejudicial error and requires a reversal of convictions.

Reuben Sturman relies on a Second Circuit case which held that witness credibility is for determination by the jury and that one witness cannot comment on the credibility of another witness. *United State v.*

*Scop,* 846 F.2d 135, 142, *modified on reh'g,* 856 F.2d 5 (2d Cir.1988). Agent Morrow, using charts, summarized the evidence and testified that the evidence showed a connection between the defendants, Swiss bank accounts, and a failure to report signature authority and income. Agent Morrow did not comment directly on any specific witness' credibility but rather gave his view of the events. The summary testimony was neither inflammatory nor prejudicial, the District Court properly instructed the jury on the elements of each count charged, and Agent Morrow's testimony and charts aided the jury in organizing the proof presented.

The admission of testimony summarizing evidence has been held to be admissible in income tax prosecutions. *United States v. Lattus,* 512 F.2d 352, 353 (6th Cir.1975). This Court has allowed such testimony in criminal trials when the judge charges the jury as to all the elements necessary for conviction, where the summary is intended to aid the jury in organizing proof, and where the summary is not inflammatory or prejudicially worded. *United States v. Scales,* 594 F.2d 558, 562 (6th Cir.), *cert. denied,* 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). We find that under this standard the District Court properly admitted the testimony.

## XI. ADMISSION OF FOREIGN DEPOSITIONS

Reuben and David Sturman both contend that the depositions taken of four Swiss bank officials in Switzerland did not comply with Federal Rule of Criminal Procedure 15. Rule 15(d) provides:

> Subject to such additional conditions as the court shall provide, a deposition shall be taken and filed in the manner provided in civil actions except as otherwise provided in these rules, provided that ... the scope and manner of examination and cross-examination shall be such as would be allowed in the trial itself.

The defendants claim that the admission of the depositions at trial violated their rights to due process, confrontation and effective assistance of counsel.

Depositions of four Swiss bank officials were taken in Switzerland prior to trial. These depositions were presided over by a Swiss magistrate, Benedikt Holdener. Magistrate Holdener had aided the United States in the investigation and prosecution of the defendants. During the depositions, Holdener instructed the defendants to register any objections to the proceeding in writing. He disallowed verbatim transcription. Instead, Holdener dictated a summary of each question and response and noted objections either contemporaneously or required them to be submitted later in writing. Witnesses were given the opportunity to read the summaries and then sign them. During the trial in this case, the English translation of a portion of these depositions was read into the record.

### A. Failure to Comply with Fed. R.Crim.P. 15

■ The District Court overruled the defendants' objections to the foreign depositions finding,

> that the defendants were entitled to be present there, they were entitled to have counsel there, counsel for the government was entitled to have questions read, and it appears to me that counsel for the defendants were entitled to submit questions to the magistrate for answers by the witnesses.

Under a test articulated by the Second Circuit, these procedural safeguards support allowance of the depositions despite variations from United States procedures. The Second Circuit held that a foreign deposition would be admissible,

> unless the manner of examination required by the law of the host nation is so incompatible with our fundamental principles of fairness or so prone to inaccuracy or bias as to render the testimony inherently unreliable....

*United States v. Salim,* 855 F.2d 944, 953 (2d Cir.1988). Swiss law forbids verbatim transcription so the summary method of establishing the record was the most effective legal method. All defense questions, with just one exception, were submitted to the witnesses so that objections and deter-

minations on admissibility could be litigated later.[5] Although the witnesses were not given an oath, defense conceded that each witness was told the penalties for giving false testimony. The Second Circuit has recognized that an oath may not be given in some foreign countries and that the omission of such an oath does not automatically result in the suppression of the deposition. *See United States v. Casamento*, 887 F.2d 1141, 1172–75 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). Cross-examination, acceptance and consideration of objections, and the review of all written testimony by the witnesses ensured that the testimony complied with Rule 15(d) to the extent possible. Depositions taken in foreign countries cannot at all times completely emulate the United States' method of obtaining testimony. Here, all steps were taken to ensure the defendants' rights while respecting the legal rules established in a different country. The District Court achieved substantial compliance with Federal Rule of Criminal Procedure 15.

The same factors which demonstrate substantial compliance with Rule 15 rebut any claims based on due process violations or interference with effective assistance of counsel. The ability of the defendants to cross-examine, and the admission of all defense questions, protected the defendants against the constitutional violations alleged. Defendants have failed to point to any way in which they were prejudiced by the procedures used.

### B. Neutrality or Impartiality of the Magistrate

■ David and Reuben Sturman also object to Magistrate Holdener presiding over the depositions asserting that he was not neutral because of his role in the prosecutions. Holdener himself overruled the objection. Neither Rule 15 nor Federal Rule of Civil Procedure 28(b) address the issue of neutral or impartial magistrates. Instead, these rules accept the necessity of foreign officials presiding over foreign dep-

ositions. If the law of Switzerland permits a person to serve as both magistrate and prosecuting attorney, then that practice must be permissible in obtaining depositions for United States litigation provided that the criteria in *Salim* are met. The defendants have failed to establish evidence that Magistrate Holdener's handling of the deposition unfairly prejudiced the defendants or that the testimony could be considered unreliable. The defendants were provided sufficient opportunity to ask questions designed to refute the credibility of the witnesses. The admission into evidence of the depositions did not violate any constitutional rights of the defendants and did not constitute unfair prejudice.

### C. Pierre Perrelet's Identification

■ The defense also objects to Pierre Perrelet's identification of defendant Reuben Sturman. Perrelet was asked to identify his former customer. He responded by stating, "[p]resumably the second gentlemen at the left side of the table in second place who is leaning on a briefcase is a customer of SBC whom I looked after in the past." This description identified Reuben Sturman. Defense seeks a reversal of Reuben Sturman's convictions since this identification was based on a presumption. From the context in which the word "presumably" was used, it seems sufficiently clear that the witness was identifying the defendant and the "presumably" was merely a euphemism.

### XII. DISQUALIFICATION OF DISTRICT JUDGE

■ Reuben Sturman argues that the district judge in this case was under a duty to *sua sponte* recuse himself because of his bias against the defendants. After pronouncing the sentence and judgment, the judge requested the defendants and their attorneys to approach the bench. He then stated that he had had to separate his feelings about the defendants' business

---

**5.** It should be noted that only Reuben Sturman exercised his cross-examination rights. The other defendants are presumed to have waived their rights to cross-examination. The one question rejected by Holdener concerned the salary of one of the witnesses.

from the defendants in imposing the sentence. He concluded, however, by noting that he had tried his best to keep his feelings about the type of business in which the defendants were engaged out of the sentencing and believed he had succeeded.[6]

Reuben Sturman argues that the judge's comments indicate a bias which effected the entire four-month trial and previous years of motions and discretionary rulings. The defendant asserts that because the judge failed to recuse himself at the outset of the case, the convictions in the case must be reversed.

A federal judge is required to recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This Circuit has determined that whenever a judge's impartiality is questioned, it must be determined whether "a reasonable, objective person, knowing all the circumstances, would not have questioned [the judge's] impartiality." *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir.), *cert. denied*, 111 S.Ct. 508, 112 L.Ed.2d 520 (1990); *see also* H.R.Rep. No. 1453, 93d Cong., 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6354.

Under the test established in *Hughes*, this Court must look at all the circumstances surrounding the case to determine whether a reasonable person would believe the judge was impartial. Several factors support a finding that Judge White acted impartially during the trial. First, the defendants can point to no decision on the part of the judge that clearly demonstrated

bias. The contentions in the appeal that raise abuse of discretion issues have been found to be without merit. Second, the sentences given the defendants, rather than exhibiting bias against the defendants, are substantially below the level requested by the government and appear fair under the circumstances. Third, this Court may take at face value Judge White's assertion that he set his feelings about the defendants' business aside. Judges, whether they are hearing tax evasion cases or vicious murder prosecutions, may have views about the nature and heinousness of the underlying crime. All judges, as part of their decisionmaking process, seek to set these feelings aside. Judge White merely articulated a tension all judges share. This Court holds that the defendants have failed to prove that Judge White's personal beliefs concerning pornography tainted the proceedings.[7]

## XIII. VIOLATIONS OF THE MUTUAL ASSISTANCE TREATY

Reuben and David Sturman both raise objections to the use of records obtained from Switzerland under the Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, May 25, 1973, United States–Switzerland, 27 U.S.T. 209, T.I.A.S. 8302. The Treaty ("Treaty") states that Switzerland agrees to provide information and access to bank records in Switzerland only for a specifically defined list of criminal offenses. Reuben Sturman

---

**6.** The transcription of the judge's comments reads in part:

I have gone out of my way, very frankly, as a judge to separate in my mind the business that the defendants are in from what they are charged with.

. . . . .

However, it is this Court's feeling that even thought [sic] the defendants are suffering and have gone through an ordeal, I can't help but think that having seen many movies that depicted certain scenes, that probably the gentleman involved in selling, first of all, it runs through my mind that somebody has to be paid to appear in those scenes.

Quite frankly, I have to believe that some people who have acted in those scenes have

gone through some tremendous pressures of their own.

. . . . .

I had to say that. I have tried my best to, and I think I have in keeping that from involving the sentence in this case. I have tried to limit it to the tax matters in this case and the conspiracy that was alleged and the other charges in this case which have nothing to do with—indirectly it may with the businesses—but should not involve my thinking in the sentences.

**7.** No motion for recusal was filed with the District Court. Indeed, defense counsel complimented the district judge at this same sentencing hearing on his fairness in presiding over the case.

asserts that the United States government submitted false information concerning the defendant's connection with organized crime in order to obtain his records under the Treaty. He claims that these submissions and the resultant release of records violated his fourth amendment privacy and fifth amendment due process rights. David Sturman objects to the use of the records obtained under the Treaty provisions in the case against him since the government did not provide evidence to Switzerland concerning David Sturman when they sought the records.

The United States requested assistance from the government in Switzerland in obtaining the bank records of Reuben Sturman. In acquiring these records, the United States government must submit evidence to Switzerland that shows the requested records relate to one of a select list of criminal offenses. The United States government submitted evidence to Switzerland which indicated that Reuben Sturman had some relationship to organized crime. The evidence submitted to Switzerland was never disclosed to Reuben Sturman despite his discovery request. The District Court, after a *in camera* review of the evidence, ruled that the defendant had failed to show the government misrepresented the facts. Both David and Reuben Sturman assert that the records obtained as a result of the United States' action under the Treaty should not be admissible. They further argue that should this evidence be found inadmissible, the convictions based on the evidence should be reversed.

Article 37 of the Treaty provides that,

[t]he existence of restrictions in this Treaty shall not give rise to a right on the part of any person to take any action in the United States to suppress or exclude any evidence or to obtain other judicial relief in connection with the requests under this Treaty....

Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, May 25, 1973, United States–Switzerland, 27 U.S.T. 209, T.I.A.S. 8302.[8] This language indicates that neither David nor Reuben Sturman have standing to raise a claim under the Treaty. Relying on the decision of the D.C. Circuit Court in *Cardenas v. Smith*, 733 F.2d 909, 917–19 (D.C.Cir.1984), defendants claim that the Treaty cannot deprive them of constitutional rights. *Id.* at 919.[9] Because we find the defendants have not been deprived of their constitutional rights, we do not consider whether they have standing to raise such claims.

### A. Fourth Amendment

 Reuben Sturman maintains that, because of Switzerland's strict banking secrecy laws, he has a reasonable expectation of privacy protected by the fourth amendment. In support of his assertion of an expectation of privacy, he relies on the Swiss penalties of imprisonment or fine for revealing information and on the Treaty's goal of preserving the integrity of Swiss banking law. In essence, the defendant argues a constitutional right created by the statutory rights granted him by a foreign country to records in that country. No such right of privacy in bank-

**8.** The Technical Analysis of Article 37 goes further adding,

[e]nforcement of the provisions of the Treaty is a matter for the Contracting parties, and does not give rise to any right on the part of defendants ... to obtain judicial relief.... Technical Analysis of the Treaty Between the United States and Switzerland on Mutual Assistance in Criminal Matters, *reprinted in* Message from the President transmitting the Treaty with the Swiss Confederation on Mutual Assistance in Criminal Matters, 94th Cong., 2d Sess. 34 (1976).

**9.** The *Cardenas* case involved an appeal by a nonresident alien seeking redress in United States Courts for the seizure of Swiss accounts

in which plaintiff had an interest. The United States government had encouraged the Swiss government to seize the accounts. The plaintiff claimed that the seizure violated her rights under the fourth and fifth amendments as well as various statutory and Treaty related obligations. The D.C. Circuit recognized that Article 37 precluded any claims arising under the Treaty. The court found, however, that there was no evidence that the Treaty intended to preclude judicial review of the statutory and constitutional claims. The court reversed the lower court's decision to dismiss the complaint so that the statutory and constitutional claims could be heard. 733 F.2d at 911–19.

ing records is recognized in the United States. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

Any privacy right conferred on Reuben Sturman by Switzerland and any remedy given for a violation of that right is limited by the terms of the Treaty. The Treaty clearly indicates that the Swiss government has agreed that an American citizen's right to privacy can be curtailed under certain circumstances. The Treaty also evidences a decision by the Swiss government to limit the remedy available once bank records are released. The Swiss government has limited the right to privacy given by its laws and denied to depositors any expectancy that, if records were disclosed to the United States, they could be suppressed or excluded from evidence. This intent is plainly stated in the language of Article 37 which is part of the law of Switzerland as well as the United States.

Even if Article 37 does not foreclose a fourth amendment claim for suppression of evidence, Reuben Sturman had no reasonable expectation of privacy in the documents for fourth amendment purposes. The Treaty makes any expectation of privacy limited through its terms. If no such expectation exists, then his ability to raise a fourth amendment claim is limited by the holdings of the United States Supreme Court. The Supreme Court has held that there is no privacy interest in the records and documents of third parties. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Miller,* 425 U.S. at 435, 96 S.Ct. at 1620. Further, the fourth amendment does not justify exclusion of evidence when the defendant is not the victim of the challenged practices. The supervisory power of the federal courts does not allow it to suppress evidence that has been seized unlawfully from a person not before the court. *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). Thus, since an individual has no privacy interest in his bank records, he cannot make a motion for exclusion once they are obtained. Only the holder of the records, for example the bank, can raise an objection.

## B. Due Process Claims

Reuben Sturman asserts that the submission of false statements linking him to organized crime in order to obtain information from a foreign country is the type of governmental misconduct which violates substantive due process. He also claims that he was denied any reasonable opportunity to respond to the charges in the documents submitted to the Swiss government and has thus been denied his procedural due process rights. These claims are without merit.

A review of the submissions to the Swiss government reveals that the documents contain no serious misrepresentations concerning the defendant. The District Court's review of the documents generated the same opinion. Even if misrepresentations were found, a reversal of conviction is not automatic. A federal court's supervisory power allows the court to remedy cases of serious governmental misconduct. *Payner,* 447 U.S. at 727, 100 S.Ct. at 24; *United States v. Gjieli,* 717 F.2d 968 (6th Cir.1983), *cert. denied,* 465 U.S. 1101, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). Reversals of convictions using this power should not be granted readily. *Id.* at 978. This Court has held that the reversal of a conviction should be granted only when the following prerequisites are met:

> (1) there must be a constitutional injury which is personal to the complaining defendant, (2) the injury must "harm" the defendant in a legally significant way, (3) there must be an injury to the judicial system, (4) the "remedy" selected by the Court to preserve judicial integrity and deter future misconduct may not exceed established limitations on the court's power, and (5) the remedy selected must be narrowly tailored.

*Id.* at 978–79.

In *Gjieli,* the government improperly released defendant, Zeff Lulgjuraj, from prison. His release signalled his codefendants that a Bureau of Alcohol, Tobacco and Firearms agent was ready to deliver Lulgjuraj to them. The government officials submitted a false writ to a district judge in

order to obtain the prisoner's release. One agent posed as a United States Marshal in order to secure custody of the prisoner. Applying the test above, this Court held that the government's misconduct did not entitle the defendants to reversal of their convictions. *Id.* at 979.

In this case, Reuben Sturman has suffered no identifiable constitutional injury. The defendant has no constitutional right to review submissions to the Swiss government made in the course of an investigation. Even if such a right existed, the defendant received adequate protection through the *in camera* review of the documents by the District Court and this Court. As discussed above, no right arises from any expectation of privacy asserted by the defendant. Reuben Sturman also urges that this Court find a deprivation of a liberty interest due to the stigmatization of his name. The documents submitted to the Swiss government have never been released or made public. This Court has held that "in order to establish a protectable liberty interest, the plaintiff must demonstrate ... that the defendants publicly and voluntarily disclosed stigmatizing charges or information...." *Yashon v. Gregory,* 737 F.2d 547, 556 (6th Cir.1984).

Misconduct, if any, committed by the government in this case is not as serious as that committed in *Gjieli* where a reversal of conviction was denied. We find that the defendant has failed to satisfy the test articulated in *Gjieli.*

### C. David Sturman

 David Sturman obtained a decision from the Swiss Federal Supreme Court which held that no Swiss evidence could be used against him in a case for tax evasion. Notice of Ruling by the Swiss Supreme Court That No Evidence Obtained from Switzerland May be Used Against David Sturman, October 13, 1989. Using this decision, David Sturman objected to the use of the evidence in the District Court. The District Court overruled his objection. We agree. The Swiss Central Authority advised the United States government that the Swiss documents could only be used against the codefendants if they were participants in Reuben Sturman's criminal activities. Article 5 para. 2(b) of the Treaty provides that evidence obtained under the Treaty can be used against persons accused of participating in the criminal activity and accessories. Evidence produced during this trial shows David Sturman's participation in Reuben Sturman's criminal activity. The admission of the Swiss evidence was thus permissible under the Treaty.

### XIV. DENIAL OF REUBEN STURMAN'S DISCOVERY REQUEST

A Special Agent of the IRS, Richard N. Rosfelder, who was in charge of the investigation against the defendants, testified at trial about the investigation. Following his testimony, Reuben Sturman requested that the government produce several documents related to the testimony. Specifically, the defendant requested Rosfelder's Special Agent's Report outlining the investigation and suggesting indictment, the submissions to the Swiss government sent with the request for information under the Mutual Assistance Treaty, and the agent's grand jury testimony. The defendant claims that the government failed to produce 99% of the Special Agent's Report, the Swiss submissions, and 100 pages of grand jury testimony. The District Court held that the missing documents did not need to be produced and refused a request to conduct further voir dire of Special Agent Rosfelder to determine the contents of the documents.

A trial court's rulings on matters relating to the production of documents is reviewed under a clearly erroneous standard. *United States v. Nathan,* 816 F.2d 230 (6th Cir.1987). The defendant raises two arguments in support of his contention that the denial of his discovery motion was reversible error.

 First, the defendant claims that the denial of the discovery motion violates the provisions of the Jencks Act. 18 U.S.C. § 3500 (1985). The Jencks Act addresses demands for the production of statements

and reports of witnesses. Particularly, the statute provides:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.[10]

It is clear that the submissions to the Swiss government do not fall under the protections of the Act since they were prepared and signed by government attorneys, were not a verbatim transcript of any statements made by the agent, and were not reviewed for accuracy by the agent. The Special Agent's Report was reviewed by the District Court and certain sections which appeared to be statements of the witness were ordered released to the defendant. The remainder of the document is an internal prosecution report, prepared prior to the events discussed under direct examination, and thus exempt from discovery under the Jencks Act. *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir.1987). The defendant also protests the denial of discovery with respect to the redacted portions of the grand jury testimony. The government claims that these portions did not need to be given to the defendant since they did not relate to the direct testimony of the witness and merely summarized documentary evidence and discussed subjects of investigation other than Reuben Sturman. A review of the redacted portions of the testimony reveals that this assessment is accurate.

■ Second, the defendant raises a protest to the nondisclosure of these documents based on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Supreme Court held in *Brady* that the suppression by the prosecution of evidence which is material to either guilt or punishment violates due process. This Court has held that,

> if the government does fail to disclose *Brady* material, the defendant has a constitutional remedy for the nondisclosure *only* if the defendant can show that there is a reasonable probability that "the omission deprived the defendant of a fair trial."

*United States v. Presser*, 844 F.2d 1275, 1282 (6th Cir.1988) (citation omitted) (emphasis in original). The defendant has failed to show a reasonable probability that he was denied a fair trial. The evidence supporting the defendant's conviction was substantial. No arguments were made which suggest the information withheld contains facts which go directly to the guilt or innocence of the defendants. Both this Court and the District Court, in their *in camera* review, found that they do not. The District Court did not err in denying Reuben Sturman's discovery motion.

## XV. THE BANK SECRECY ACT AND SELF–INCRIMINATION

■ Reuben Sturman was under investigation for tax-related violations from 1976 and was under grand jury investigation from 1978. These investigations included the examination of the defendant's foreign bank accounts. Reuben Sturman's indictment listed several counts, associated with The Bank Secrecy Act, which alleged that the defendant had failed to file information related to the foreign accounts during the years he was being investigated. The defendant claims that the Bank Secrecy Act, which requires a person to file certain information if they have over a minimum amount of money in foreign accounts, is directed at persons suspect of criminal activities and promotes self-incrimination. The defendant asserts that the Act is therefore unconstitutional and that

---

**10.** The statute defines the term statement as
(1) a written statement made by said witness and signed or otherwise adopted or approved by him;
(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
18 U.S.C. § 3500(e).

the trial court erred in denying his motion to dismiss and motion for judgment of acquittal on the counts related to the Act.

The Supreme Court has held that taxpayers cannot assert a violation of their rights against compulsory self-incrimination when they refuse to answer questions on a tax return for fear authorities will discover illegal activity. *United States v. Sullivan*, 274 U.S. 259, 260, 47 S.Ct. 607, 607, 71 L.Ed. 1037 (1927). *Sullivan* implies that any objections to specific questions will be considered only if the individual files a completed return and raises the objections in the return. A defendant's fear of self-incrimination cannot serve as a defense to a failure to complete the information called for on his tax return unless he raised an objection when he filed.

Even if *Sullivan* were not applicable to this situation, the defendant's claim is still without merit. The defendant bases his claim on a line of cases which have found various reporting requirements in violation of the privilege against compulsory self-incrimination when specific conditions are met. *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 716, 19 L.Ed.2d 906 (1968); *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).[11] The Supreme Court held in these cases that statutes violate the right against compulsory self-incrimination when (1) they are directed against a "selective group inherently suspect of criminal activity"; (2) requirements are imposed in an "area permeated with criminal statutes"; and (3) reporting requirements would have placed the subject in real danger of self-incrimination. *See Marchetti*, 390 U.S. at 47, 88 S.Ct. at 702; *Grosso*, 390 U.S. at 64, 88 S.Ct. at 711. The Bank Secrecy Act applies to all persons making

foreign deposits, most of whom do so with legally obtained funds. The requirement is imposed in the banking regulatory field which is not infused with criminal statutes. In addition, the disclosures do not subject the defendant to a real danger of self-incrimination since the source of the funds is not disclosed. It is not evident from the information provided whether the money in the account came from a legitimate adult entertainment business or from a scheme to skim money from a business. Thus, the defendant has failed to show that the Bank Secrecy Act violated any individual right *Marchetti* and *Grosso* seek to protect.

## XVI. DOUBLE JEOPARDY

■ Reuben Sturman received consecutive fines for Counts VII–XI, charging him with making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1), and Counts II–VI, charging him with attempting to evade income taxes in violation of 26 U.S.C. § 7201. Relying on several cases from other circuit courts,[12] the defendant argues that filing a false tax return under section 7206(1) is a lesser included offense under attempted income tax evasion in violation of section 7201. In cases of lesser included offenses, consecutive sentences are double jeopardy since the offender cannot be tried and convicted under both statutes. At least one court, however, has recognized that the cases cited by the defendant address only cases where the proof of tax evasion necessarily proves the preparation and filing of a fraudulent return. *United States v. Franks*, 723 F.2d 1482, 1487 (10th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). The Tenth Circuit found that a misrepresentation of foreign bank account information is distinct from understating income on a tax return. Proving that a taxpayer vio-

---

**11.** These cases dealt with an occupational tax related to wagers. Under the statute, persons registering as wagers had to keep on their persons stamps showing the payment of tax, maintain daily wagering records, and keep their books open for inspection. These persons were also liable for an occupational tax. The petitioners in these cases argued that the registration and tax requirements violated their rights against self-incrimination. Based on the crite-

ria discussed above, the court found for the petitioners.

**12.** *United States v. Citron*, 783 F.2d 307, 312 (2d Cir.1986), *following remand*, 853 F.2d 1055 (2d Cir.1988); *United States v. Pulawa*, 532 F.2d 1301, 1302 (9th Cir.1976); *United States v. Slutsky*, 487 F.2d 832, 845 (2d Cir.), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974).

lated section 7206(1) by misrepresenting her interest in or signature authority on a foreign account does not necessarily prove tax evasion. When the proofs on the charges are separate, the sentencing may be consecutive. *Id.* at 1487. We adopt the reasoning of the Tenth Circuit and allow the sentence to stand.

## XVII. REFUSAL TO GIVE JURY INSTRUCTIONS

Reuben Sturman objects to the trial court's rejection of nine jury instructions requested by the defendant. Defendant seeks a reversal of his convictions due to the jury instruction errors. The defendant's objections are without merit.

■ The first requested jury instruction whose denial the defendant protests would have informed the jury that the activities of the defendants were not illegal unless the activities furthered a conspiracy to impede the IRS. A jury instruction read by the court instructed the jury that a conviction of the defendants on Count I was only possible if the government showed that the "means or methods described in the indictment were agreed upon to be used in an effort to ... accomplish ... the conspiracy." This instruction adequately covers the same ground as the requested instruction.

■ Defendant's requested jury instructions numbered 9, 10, 13, 14, and 15 set forth the defendant's argument that if the government had proved evasion of corporate, as opposed to individual income, then he was entitled to acquittal. The defendant asserts that the failure to present the requested instructions resulted in the jury only being presented with the prosecution's theory of the case. These instructions were addressed at Counts II–VI and Counts VII–XI. The defendant has waived his right to object to the court's refusal to give instructions 14 and 15 by failing to present distinct and clear objections with regard to those instructions.

■ The defendant's theory of the case as presented in requested instructions 9, 10, and 13 makes an incorrect statement of law. The requested instructions call on the jury to distinguish between income of the defendant and income accruing to the corporations. In this case, all the Swiss accounts were set up in the name of individuals. This Court, in *Davis v. United States,* 226 F.2d 331 (6th Cir.1955), *cert. denied,* 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956), held that the unexplained transfer of funds to an individual's account constituted income to the individual. The government was not required to prove what use was made of the funds. The defense failed to prove that any of the funds were used to the benefit of any corporation.

The defendant next objects to the District Court's rejection of his suggested instructions 7 and 8 which addressed his reading of *Minarik,* 875 F.2d at 1186. This Court has found that the District Court properly allowed Count I and that *Minarik* did not apply in this case. Thus, no error resulted from the District Court's failure to give instructions 7 and 8.

■ The final objection raised in connection with jury instructions concerns defendant's requested instruction 17. This instruction, which sought to define when a false statement is knowingly made, was requested in relation to Counts VII–XI which charged the defendant with willfully filing fraudulent tax returns. The instruction stated that in order to establish a knowingly made false statement the defendant must knowingly make a statement and know that the statement is false. The instruction was designed to present defense's assertion that failure to answer a question did not constitute a knowingly made false statement. It is a crime for any person to willfully make "any return, statement ... which he does not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1). The District Court properly instructed the jury that the government had to prove that the defendant willfully made a false statement "as to a material matter alleged in the indictment." This instruction covered the issue presented by requested instruction 17. This Court finds no error on the part of the

District Court with regard to jury instructions.

## XVIII. ADMISSION INTO EVIDENCE OF FOREIGN BANK RECORDS

Volumes of business records from seven foreign banks were presented at trial. These records were "certified" by twelve affidavits or certificates of authenticity. This practice, adopted by Congress in 18 U.S.C. § 3505, dispenses with the necessity of calling a live witness to establish authenticity.

Section 3505 allows the admission of foreign records, and prevents their exclusion as hearsay, provided that a foreign certification attests to certain facts.[13] A foreign certification serves to authenticate the records. Reuben Sturman asserts that there was error in the admission and maintenance of records the prosecution received from Switzerland. He also objects to the admission of the foreign bank records urging that section 3505 is unconstitutional because it deprives him of his right to confrontation.

■ The certificates at issue indicated that the person signing the certificates was acting in the capacity of custodian of the records, that the records were made or received in the regular course of business, and that the records were part of a regular business practice that made or received the documents at the time, or within a reasonable time thereafter, of the recorded event. These attestations satisfy most of the provisions of section 3505. The certificate fails to state that the "record was made ... by (or from information transmitted by) a person with knowledge of those mat-

ters." 18 U.S.C. § 3505(a)(1)(A). Reuben Sturman contends that this foundational element must be established. This Court, when interpreting similar language in Federal Rules of Evidence 803(6),[14] has held that a witness need only have knowledge of the recordkeeping procedures. *United States v. Hathaway*, 798 F.2d 902 (6th Cir. 1986). In this case, a bank official, who would necessarily have some knowledge of the bank's recordkeeping procedures, provided the certification.

■ The defendant also protests that the certificates were not physically attached to the records being authenticated and that the certifications did not identify the specific records they authenticate. Neither of these assertions is valid. Section 3505 contains no requirement that the certificate be attached to the authenticated record. Each certificate was associated with a transmittal record that listed the account and record of accounts being produced. The certifications incorporated these transmittal letters.

The defendant also raises the following arguments: (1) that the "legal advisor" who signed the certification was not a "custodian" under the requirement of section 3505; (2) that section 3505 does not refer to records "received" which the certification includes in its description of the records; and (3) that the certification states that it was the regular course of business to make "documents of this kind" rather than the specific record being authenticated. After a careful consideration of these issues, this Court find the claims to be without merit.

---

**13.** 18 U.S.C. § 3505 reads in relevant part:
(a)(1) In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that—
 (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
 (B) such record was kept in the course of regularly conducted business activity;
 (C) the business activity made such a record as a regular practice; and

 (D) if such record is not the original, such record is a duplicate of the original;
unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
 ....

**14.** Fed.R.Evid. 803(6) list evidence which may not be excluded by the hearsay rule. Subdivision 6 addresses records of regularly conducted activity. Such records must be "made at or near the time by, or from information transmitted by, a person with knowledge...."

**1490**

Reuben Sturman also alleges that section 3505 deprives him of his sixth amendment right of confrontation. We disagree. The confrontation clause does not establish an absolute exclusion of all hearsay. Testimony of an unavailable witness is permissible provided it contains an "indicia of reliability." *United States v. Miller,* 830 F.2d 1073 (9th Cir.1987), *cert. denied,* 485 U.S. 1033, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988) (quoting *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980)). The Supreme Court in *Bourjaily v. United States,* 483 U.S. 171, 182–83, 107 S.Ct. 2775, 2782–83, 97 L.Ed.2d 144 (1987), has held that "[b]ecause 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' . . . no independent inquiry into reliability is required when the evidence 'falls within a firmly rooted hearsay exception.'" (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539) (citations omitted). Section 3505 establishes an exception to the hearsay rule for foreign business documents. This exception ensures that the requirements of the Confrontation Clause are automatically satisfied.

Finally, the defendant claims that the prosecution failed to satisfy the foundational requirements of Federal Rules of Evidence 602 and 901. Rule 602 requires the introduction of evidence which supports a finding that a witness has personal knowledge of the matter on which they are to testify. Rule 901 requires authentication and identification prior to the admissibility of any evidence. The admissibility of foreign records is a question that may be determined by the court before trial. Fed.R.Evid. 104(a); 18 U.S.C. § 3505(b); *United States v. Tedder,* 801 F.2d 1437, 1448 (4th Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987). The District Court held a pre-trial hearing on November 6 and 16, 1987 to determine the admissibility of the challenged records. There was no necessity of repeating this hearing before the jury. In addition, the prosecution did have Special Agent Rosfelder testify regarding the receipt, custody, and certification of the records. The defense was given an opportunity at that time to cross-examine the witness.

Special Agent Rosfelder admitted during his testimony that he did not have custody of the records at all times and therefore lacked personal knowledge regarding some of the details of the receipt and maintenance of the records. Even if the court did commit error by allowing Rosfelder to testify on an issue of which he did not have personal knowledge, the error is harmless. Special Agent Rosfelder's testimony was sought as the result of challenges to the certification of the records. Since we find the certificates to be adequate, the testimony was unnecessary.

## CONCLUSION

Accordingly, the decision of the District Court is AFFIRMED as to all defendants.