**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph J. JERKINS,**
**Defendant–Appellant.**

Nos. 88–1507, 88–1508.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 9, 1989.

Decided April 6, 1989.

John A. Smietanka, U.S.Atty., John C. Bruha (argued), Grand Rapids, Mich., for U.S.

David A. Dodge (argued), Grand Rapids, Mich., for Jerkins.

Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant Joseph Jerkins, a Michigan attorney, appeals from his conviction by jury verdict on all counts of a seven count consolidated indictment. Appellant was charged with (1) conspiring with Matthew Myers[1] to defraud the United States by impeding, impairing, obstructing and defeating the Internal Revenue Service in the ascertainment, computation, assessment and collection of the income taxes of Matthew Myers, (2) attempting to evade Myers' 1980 income taxes, (3) attempting to evade Myers' 1981 income taxes, (4) aiding and assisting in the preparation of Myers' false return for 1982, (5) attempting to evade his own taxes for 1982, (6) filing a false return for 1982, and (7) filing a false return for 1984.[2] For the following reasons, we affirm the convictions.

### I.

The events which formed the basis of appellant's conviction involved several purchases of property made by Myers by and through appellant, and the planning and preparation of Myers' income tax returns for 1980, 1981 and 1982 and appellant's returns for 1982 and 1984.

Appellant became associated with Myers in the early 1970's, when Myers was seek-

---

1. Myers, a marijuana dealer and a client of Jerkins, was also indicted on various drug charges. He entered into a plea agreement with the government and was a major witness against Jerkins at trial.

2. Appellant was indicted along with Myers in a seven count indictment on April 9, 1987. Four of the counts, counts 1, 2, 3, and 5, related to appellant. Appellant was indicted individually on July 29, 1987 in a three count indictment. The indictments were ordered consolidated by the district court on November 2, 1987.

ing someone to represent one of his marijuana distributors. They developed a social relationship, and appellant became a father figure to Myers.

Myers testified that during the seventies and early eighties he was dealing large quantities of marijuana and that he accumulated large quantities of cash which he had a problem disposing of. From 1977 through 1986 appellant and Myers purchased several pieces of property in Florida, Michigan and Aspen, Colorado. In making many of those purchases, Myers would give his share of the purchase price in cash to appellant who would deposit the funds in his law firm's trust account and write a trust account check for the purchase price. Myers and appellant took precautions to conceal Myers' interest in the properties. These purchases formed the basis of the conspiracy count.

In 1982, appellant and Myers split up their interests in the properties they had purchased. Because of the difference in value of the properties, Myers gave appellant $58,800 in cash. Appellant did not report the $58,800 on his 1982 income tax return nor did he mention it to his tax preparer. As a result of the failure to report this income, it was computed that appellant owed an additional $17,151 in tax for 1982. This was the basis of counts 5 and 6 of the indictment.

In 1984, Myers purchased three pieces of property on Academy Street from Skila LTD, a partnership consisting of appellant and his law partners. The purchase price stated on the purchase agreements was $92,856, but Myers testified that he paid $150,000 for the properties, with the difference in the purchase price and the contract price being paid to appellant in cash. Appellant did not report this amount on his 1984 income tax return. Because of the failure to report this income, appellant owed an additional $22,166 in tax for 1984. This was the basis of count seven of the indictment.

Counts two, three and four of the indictment dealt with the preparation of Myers' income tax returns for 1980, 1981 and 1982.

In the spring of 1979, appellant introduced Myers to Ernest Steiner, an accountant, for the purpose of preparing Myers' 1978 income tax return. Steiner had previously assisted appellant in preparing delinquent tax returns when he was under investigation for not filing returns in the early 1970's.

In 1980, Myers reported income of $42,-722, which was considerably less than he earned from the sale of marijuana. Myers testified that appellant reviewed the return, and Steiner testified that appellant had agreed to the figures used on the return. Steiner also had billing records showing conferences with appellant in connection with the preparation of the 1980 return.

In 1981, the year in which many of the property purchases occurred, and a year when Myers distributed a semi-truck load of marijuana, Myers intended to report $40,000 to $60,000 on his income tax return. Steiner prepared a 1981 return showing $42,922 in income. Steiner testified that both appellant and Myers agreed to that figure, and Myers testified that he must have discussed the return with appellant because he did so every year.

In 1982, Myers reported $48,000 in W–2 income from his construction company, despite the fact that the company had no income that year. Myers was depositing cash into the company bank account and was drawing checks so he could have W–2 income. Myers testified that appellant approved of this plan.

Prior to trial, appellant moved to dismiss the conspiracy count of the indictment. The district court denied the motion and appellant's trial commenced. The jury returned a guilty verdict on all counts. Appellant filed a motion for a new trial and acquittal. Both were denied and appellant was sentenced to a total of six years in prison followed by two years probation, fines of $25,000 and costs of $8,213.99. Appellant timely appeals.

■ Appellant argues that count one of the indictment should have been dismissed, that he was prejudiced by the introduction of evidence of prior bad acts, that his con-

viction should be reversed due to the erroneous admission of hearsay evidence under Rule 801(d)(2)(E), and that his conviction was against the weight of the evidence.[3]

## II.

### A.

Count one of the indictment charged appellant with conspiring to defraud the United States by impeding, impairing, obstructing and defeating the lawful function of the Internal Revenue Service in violation of 18 U.S.C. § 371. Section 371 reads in pertinent part as follows: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose ... each shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. § 371. This language reaches " 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of Government.' " *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed. 2d 973 (1966) (quoting *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910)). This court has expressly held that conspiracies to defraud the IRS are chargeable under section 371. *United States v. Shermetaro*, 625 F.2d 104, 111 (6th Cir.1980). The *Dennis* court warned, however, that "indictments under the broad language of the general conspiracy statute must be scrutinized carefully as to each of the charged defendants because of the possibility, inherent in a criminal conspiracy

charge, that its wide net may ensnare the innocent as well as the culpable." *Dennis*, 384 U.S. at 860, 86 S.Ct. at 1843.

[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

In denying appellant's motion to dismiss, the district court applied the above standard and found that "[c]ount I is specific enough to inform [appellant] of the charges against him and to enable him to protect against further prosecutions for the same offense."

Appellant argues that the conspiracy count should have been dismissed because the object of the conspiracy was not a crime and because it was not established that he knew of the conspiracy's unlawful purpose or that he agreed to participate.

Initially, appellant characterizes the allegations in the indictment as a charge of money laundering and notes that during the relevant time period money laundering was not a crime.[4] Furthermore, appellant alludes to the cash deposits of less than $10,000 and interprets them as structured transactions and notes that such transactions are not a crime.[5]

■■■ It is a basic tenet of conspiracy law that an overt act in furtherance of a

---

3. In his reply brief, appellant challenges the district court's summary of the elements of the charged offenses given in response to a question asked by the jury during its deliberations. "It is impermissible to mention an issue for the first time in a reply brief because the appellee then has no opportunity to respond." *Knighten v. Commissioner*, 702 F.2d 59, 60 n. 1 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983). "[C]ourt decisions have made it clear that the appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in appellee's brief." 16 C. Wright, A. Miller, E. Cooper, & E. Grossman, *Federal Practice and Procedure* § 3974 at 428 (1977). Accordingly, we will not address this issue.

4. Money laundering became a substantive offense in 1986 when Congress passed the Money Laundering Control Act of 1986. 18 U.S.C. § 1956 (1987).

5. Contrary to appellant's assertion, the courts are split on whether structuring transactions to avoid the Currency and Foreign Transactions Reporting Act, 31 U.S.C. §§ 5311–24, are substantive crimes. This split was discussed in *United States v. Polychron*, 841 F.2d 833, 835–36 (8th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988).

conspiracy need not be illegal itself. *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942); *United States v. Reifsteck*, 841 F.2d 701, 704 (6th Cir.1988). The government, citing to this basic principle, argues that the indictment did state a crime since money laundering or structuring transactions were not the objects of the conspiracy, but rather the object was to defraud the IRS and these actions were merely some of the means by which this was accomplished. We agree with the government's position. The appellant was not charged with the substantive offense of money laundering nor was he charged with acts committed in furtherance of his conspiracy to defraud the IRS. Since the overt acts do not have to be illegal themselves, this argument must fail.

 Appellant's next argument focuses on the statement in the indictment that the object of the indictment was to avoid the full amount of tax. He asserts that it is not a crime to try to avoid paying taxes.[6] The government correctly points out that taxpayers have the right to avoid taxes only by means which the law permits. *See Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). It argues that the indictment was sufficient because it alleged a conspiracy to avoid taxes by illegal means, i.e., false returns and concealment of income. The government's argument is persuasive. While it may be true that the transactions appellant and Myers entered into may have been legal on their face, the indictment clearly alleged, and evidence was presented at trial, that the purpose behind the transactions was to conceal income. Furthermore, the indictment also alleged that the filing of false returns was also part of the conspiracy. For these reasons, this argument must also fail.

The second part of appellant's first argument is that the indictment did not allege, and the government did not prove, that there was an agreement by appellant to participate in the conspiracy. As the district court correctly noted, appellant ignores the first paragraph of the indictment in making this argument. The first paragraph charges that appellant and Myers "did knowingly, willfully and unlawfully combine, conspire, confederate and agree together ... to defraud the United States...."

 In making his argument, appellant asserts that there was no allegation or proof that he knew the source of Myers' income. It is true generally, that to be guilty of conspiracy, the evidence must demonstrate that the defendant knew the conspiracy's essential objectives. *See United States v. Krasovich*, 819 F.2d 253, 256 (9th Cir.1987). The indictment charged appellant with conspiring to defraud the United States. While the indictment does state that an object of the conspiracy was to conceal the source of Myers' income it is clear from reading the indictment as a whole, that the essential objective of the conspiracy was to conceal the amount of Myers' income, to defraud the United States. Also, there was ample evidence to demonstrate appellant's part in this conspiracy. In particular we note the testimony of Myers and Steiner concerning appellant's role in the preparation of Myers' income tax returns.

Accordingly, we conclude that count one of the indictment was sufficient and that the district court correctly denied appellant's motion to dismiss it.

### B.

Appellant argues that the district court erred in admitting evidence of prior bad acts under Federal Rule of Evidence 404(b). Specifically, he challenges the government's introduction of his late filing of his 1969, 1970 and 1971 tax returns, the introduction of evidence concerning investments

---

6. Appellant also notes that the real estate transactions were "legal and far from unusual" and argues that since the means by which the government alleged Myers sought to avoid taxes were not illegal the indictment did not state a crime. The transactions were alleged as overt acts in furtherance of the conspiracy, since these acts do not have to be illegal to support a conspiracy charge, appellant's argument is not persuasive.

in Kalamazoo Home Theater,[7] and its interjection of references to other drug dealers. He argues that the evidence's probative value was outweighed by undue prejudice under rule 404(b) and rule 403.[8]

Before admitting prior acts evidence, the district court must determine that the evidence is admissible for a proper purpose and that the probative value of the evidence outweighs its potential prejudicial effects. The district court has broad discretion in balancing probative value against potential prejudicial impact. Furthermore, the prior acts generally must be relevant to a matter at issue and must be substantially similar to, and near in time to, the offense charged in the indictment.

*United States v. Ismail,* 756 F.2d 1253, 1259 (6th Cir.1985).

In allowing the introduction of evidence concerning appellant's failure to file his 1969, 1970 and 1971 income tax returns, the district court applied the above standard and found that the other acts were similar in nature and close in time and that its admission did not result in unfair prejudice. Appellant argues that the acts are not identical to the one charged and that they are not close enough in time to be relevant and that their admission resulted in unfair prejudice.[9]

Appellant's argument is not persuasive. Initially, appellant erroneously argues that the failure to file his 1969, 1970, and 1971 returns should not have been admitted because the acts were not identical to the charged acts. This argument misconstrues the standard, which is that the other acts be substantially similar to the charged offense. The district court drew the follow-

ing conclusion concerning the similarity factor:

Also there's a requirement that the prior act be similar.... Here there's an admission of failure to file. I suppose if you fail to file, you're attempting to deprive the government of its income which it's due. And the charge, one of the charges is a failure to—a conspiracy to deprive the government of income that it was entitled to. In a different manner, but still nevertheless, a charge of failing—or, of deceiving the United States Internal Revenue Service. And the fact that the alleged schemes or plans may have been slightly different, that doesn't strike me as being of a sufficient different nature or scope to make it inadmissible.

We agree with the district court's conclusion that the failure to file a return and the evasion of taxes are substantially similar to meet this prong of the admissibility test.

On the timeliness issue, the district court drew the following conclusion:

There isn't any magic number of months or years that I can find, but in this particular case, the years were '69, '70, and '71. The interview occurred in '73. The instant offense is alleged to have started in '77. Although it may be a close call, it seems to me that in view of the offense that's charged, the—I just think that the period of time is within a timeliness requirement.

This court noted in *Ismail,* that "there is no absolute maximum number of years that may separate a prior act and the offense charged." *Ismail,* 756 F.2d at 1260. Given that there is no set time limit for admissibility of other acts evidence and the

---

7. Appellant bases this argument on an assertion that the government introduced evidence that other drug dealers invested in Kalamazoo Home Theater to support a theory that the investment was a sham. This assertion is belied by the district court's ruling which held this evidence to be inadmissible. Accordingly, this portion of appellant's argument is without merit.

8. In ruling on the admissibility of 404(b) evidence, the district court engages in the same weighing and balancing that is used in making

rule 403 determinations. *See* Fed.R.Evid. 404(b) Advisory Committee Notes to Subdivision (b).

9. Appellant does not dispute that his failure to file tax returns was relevant to a matter at issue. *See e.g., United States v. Snow,* 529 F.2d 224, 225–26 (9th Cir.) (failure to file tax returns is admissible on the issue of willfullness), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976).

district court's analysis of the acts in question, we do not believe the district court abused its discretion in concluding that these other acts met the timeliness requirement.

■ Appellant also makes an undue prejudice argument, alleging that this evidence placed him in a bad light in the eyes of the jury. The government argues that evidence of failing to file returns has been admitted on the issue of willfullness in criminal tax prosecutions, and notes that the only references to the failure to file his tax returns were made during the testimony of appellant's accountants who testified that they began working for him in preparing his delinquent returns for those years. The district court in ruling on the prejudice prong found that any prior misconduct in the same general area as the offense charged has great probative value and determined that there was no undue prejudice in this case. Given the limited use of the other acts evidence and its obvious probative value, we do not believe the district court abused its discretion in admitting this evidence.[10]

■ Finally, appellant argues generally that the government attempted to ally him with various drug dealers in an attempt to find him "guilty by association." He asserts that such tactics were severely prejudicial to his case. Given the evidence presented at trial and the broad discretion granted the district court in balancing probative value against potential prejudicial impact, we conclude that the district court did not err in allowing references to other drug dealers during the course of the trial.

## C.

Appellant argues next that he was prejudiced by the erroneous admission of the following evidence under rule 801(d)(2)(E):[11] the testimony of Barbara Bradshaw, an employee of appellant, that Myers told her that some of his money had gotten stuck to appellant's fingers, and that appellant's secretary told her that she did not want to know the particulars concerning cash deposits to appellant's trust accounts, the testimony by Steiner that Myers told him that Myers' sister-in-law was going to report him to the IRS, and that Myers told him that he paid appellant 20% as a fee for property transactions. He argues that these statements were improperly admitted because they were not in furtherance of the conspiracy involving him or they were the statement of a non coconspirator.

■ To be admissible under rule 801(d)(2)(E), a statement must be made by a conspirator during the course of and in furtherance of a conspiracy involving the defendant. *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980).

Three of the challenged statements were clearly made by a coconspirator: Myers. The fourth, the statement to Bradshaw by appellant's secretary who was not a coconspirator, falls outside of rule 801(d)(2)(E).[12] Nevertheless, the government argues that this statement was properly admitted un-

---

10. Appellant also argues that the district court erroneously denied him access to the IRS report concerning these returns. The district court examined these materials *in camera* and determined that they did not contain *Brady* material and therefore did not order the government to turn the report over to appellant. "In order to overturn an *in camera* inspection, the defendants must show that the district court abused its discretion in denying access to requested materials." *United States v. Bocra*, 623 F.2d 281, 285–86 (3d Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980). Based on the district court's analysis and the record before us, we do not find an abuse of discretion in the denial of access to these materials.

11. Federal Rule of Evidence 801(d)(2)(E) excludes from the definition of hearsay, a "statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).

12. Bradshaw testified as follows concerning this statement:

Q. What did Mrs. Richter tell you?
A. She said that she thought I would not want to know and it would be better if I did not know.

der subsection (D) [13] as a statement of an agent or employee of the defendant. Without deciding the propriety of the district court's ruling concerning this statement, we believe that considering the evidence supporting appellant's guilt, any error in the admission of this statement did not affect the substantial rights of appellant and was therefore harmless. Fed.R. Crim.P. 52(a).

■ The first statement Myers made to Bradshaw was an explanation of why he was going to give funds directly to her for deposit in the trust account instead of going through appellant. The government argues that this statement was in furtherance of the conspiracy because it involved the change in the procedures for the handling of the cash transactions from Myers to the trust account. They rely on the principle that statements which prompt a listener to act in a manner that facilitates the carrying out of the conspiracy are admissible under (d)(2)(E). *See United States v. Rahme*, 813 F.2d 31, 35 (2d Cir.1987). We agree with the government's position.

■ Concerning statements made to Steiner, the government argues they are admissible as statements made to conceal the conspiracy and to inform a conspirator of the activities of the conspiracy. *See United States v. Howard*, 770 F.2d 57, 61 (6th Cir.1985) (en banc), *cert. denied*, 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986); *United States v. Rios*, 842 F.2d 868, 874 (6th Cir.1988) (per curiam), *cert. denied*, — U.S. ——, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). These arguments are also persuasive, and we believe the admission of these statements was also proper.

■ Appellant also challenges the district court's exclusion of evidence concerning the character of Steiner. The evidence included Steiner's hospital records and the testimony of a woman concerning a spanking incident involving Steiner. Appellant argues that the evidence should have been admitted to show bias. The district court excluded the hospital records as irrelevant

and the other evidence as being extrinsic evidence to show character. Nevertheless, Steiner was cross-examined extensively concerning the latter incident. Also, appellant was able to call a psychiatrist as an expert who opined that Steiner was a psychopath whose testimony should be regarded with caution. Given the evidence that the court admitted to impeach Steiner, we do not believe the district court erred in ruling on this evidence.

### D.

Finally, appellant argues that his conviction was against the weight of the evidence. A jury must stand if there is substantial evidence, taking the view most favorable to the government to support it. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). On review of the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Appellant argues that his convictions on counts two, three, and four regarding complicity concerning Myers' 1980, 1981 and 1982 returns were not supported by the evidence since there was proof that Steiner had acted independently from him. Counts two and three charged appellant with evading Myers' income taxes for 1980 and 1981 by underreporting income. Count four charged him with aiding and assisting in the filing of a false return for 1982. This argument is countered by the evidence, however, which showed that appellant reviewed Myers' 1980 return, and agreed to the income figure which was reported. It also showed that during 1981 appellant and Myers engaged in several major real estate transactions and that appellant moved over $300,000 through his

---

**13.** Federal Rule of Evidence 801(d)(2)(D) excludes from the definition of hearsay, "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." Fed.R.Evid. 801(d)(2)(D).

firm's trust account and agreed to a return that showed only $40,922 in income for 1981. The evidence also showed that Myers prepared a 1982 return showing $48,000 in bogus W-2 income as part of a scheme which appellant knowingly approved.

■ Appellant's argument concerning counts five and six center on the testimony of his tax accountant concerning the open transaction method of handling his gain from the exchange of properties between Myers and himself.

The government argues that the jury was justified in rejecting this theory and concluding that it was merely a postindictment plan to avoid liability for failing to report the transaction in 1982. The government bases this argument on the following evidence. Appellant sold the property in 1986 after he had been advised he was under investigation. Appellant did not know of the method at the time of the exchange and had no intention of reporting the transaction in that way at that time. The idea to use the open transaction theory originated with appellant or his attorney. Appellant had given Myers unconditional warranty deeds at the time of the transaction which are inconsistent with an open or conditional transaction. Finally, when the 1986 return was filed, the name of the tax preparer was whited out, which prevented the IRS from questioning him. The government does not debate the viability of the open transaction method, but rather asserts that in this case appellant willfully evaded his 1982 income tax and used this theory in an attempt to avoid liability. We believe the above cited evidence viewed in the light most favorable to the government supports this theory and the jury's verdict.

Finally, appellant argues that the evidence was insufficient as to count seven because he did not sign the corporate Skila return in question. This argument is without merit, since count seven does not involve the Skila return, but involved appellant's filing of his personal return for 1984.

Accordingly, we conclude that appellant's convictions on all counts were supported by substantial evidence.

For the foregoing reasons, we AFFIRM appellant's convictions.