**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0968n.06

Nos. 12-2451, 12-2453

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 12, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

     v.

MARY FAWAZ AND
ELSAYED KAZEM SAFIEDINE,

                Defendants – Appellants.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before:  MOORE and McKEAGUE, Circuit Judges; HELMICK, District Judge.[*]

JEFFREY J. HELMICK, District Judge.  Following a trial, a jury found Defendants Mary Fawaz and Elsayed Kazem Safiedine guilty of conspiring to defraud the United States, in violation of 18 U.S.C. § 371.  On appeal, both defendants challenge the prison sentences the district court imposed; Fawaz also asserts the evidence presented at trial is insufficient to support her conviction.  For the reasons that follow, we vacate the defendants' sentences and remand the case to the district court for proceedings consistent with this opinion.

BACKGROUND

Safiedine operated retail gas stations in the Detroit area.  The stations and the real estate on which those stations sit are owned by various S corporations and partnerships.  Those entities – which include JSC Corporation, an S corporation; MTK Family Investments (MTK-FI), a

---

[*]  The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

partnership of which Safiedine was a 50% partner; and MTK & KLC, a partnership of which MTK-FI was a 50% partner – were owned by Safiedine and various members of his family. From about 1998 until 2002, Safiedine operated between nine and twelve Sunoco franchise gas stations, as well as several other franchise stations with other oil companies. Fawaz was Safiedine's long-time employee, and worked as his bookkeeper and manager during the time period relevant to this case. As bookkeeper, Fawaz provided Quickbooks data and bank records to Allan Cohen, the Certified Public Accountant ("CPA") for Safiedine's businesses. At various times, Fawaz also held herself out as JSC's president or vice-president.

The government began investigating Safiedine's businesses, and pursued an indictment against Safiedine and Fawaz after concluding the two conspired to conceal income the businesses received through contracts between Sunoco and JSC and to underreport the sale price of a gas station and real estate in order to avoid paying taxes on those transactions. Fawaz and Safiedine were indicted by a federal grand jury on March 13, 2008, on one count each of conspiracy to defraud the United States by impeding and impairing the lawful functions of the Internal Revenue Service, in violation of 18 U.S.C. § 371, often referred to as a *Klein* conspiracy. *See United States v. Klein*, 247 F.2d 908 (2nd Cir. 1957). Both defendants pled not guilty.

Sunoco entered into numerous franchise agreements with JSC. The franchise agreements set the terms under which the businesses would purchase and resell fuel, as well as promote Sunoco's brand. The agreements included minimum purchase amounts, and provided two types of consideration, running and upfront. Under the terms of the running consideration provision, Sunoco paid approximately 1.5 to 2 cents per gallon for each gallon of gasoline that JSC purchased above a set threshold. Under the upfront consideration provision, Sunoco paid JSC a lump sum at or near the beginning of the contract term. The upfront consideration payments were used as inducements

2

as well as to cover costs associated with updating and rebranding the fueling stations. In the event JSC breached the franchise agreements,[1] Sunoco could assert a claim to some or all of the upfront consideration payment.

The government presented evidence at trial that, between October 9, 1998, and January 5, 2001, JSC received ten upfront consideration payments from Sunoco totaling $985,000. Fawaz or Safiedine[2] signed seven of the checks over to third parties. Three checks went to Charles Burns, an officer of the Oscar Larson Company, a construction company who had done work for Safiedine at several of his properties, including those JSC operated. Four checks went to Mansour Kassabri, owner of Kassabri Construction LLC, who also performed work for JSC and other entities with which Safiedine was affiliated. While some of the money was used to pay JSC's debts to the two companies, other portions of the money were used to pay debts incurred by Safiedine's other entities. Safiedine also instructed Kassabri to forward money from the payments to other individuals, including Safiedine's brother and Moussa Souiedan, who was the assignee of one of the Sunoco contracts.

Cohen testified at trial that he prepared JSC's tax returns based on bank statements; because only one of the checks was deposited directly in JSC's bank account, Cohen listed only the amount of that check as income on JSC's tax returns between 1998 and 2001. Cohen testified after the $125,000 check was deposited in JSC's account on or about December 13, 1999, he informed Safiedine and Fawaz the company needed to pay taxes on the upfront consideration payments. Over

---

[1] The parties do not claim JSC breached the contracts, though Fawaz and Safiedine argue Sunoco's ability to reclaim some portion of the upfront consideration payments in the event of a breach makes those payments loans rather than income for tax purposes.

[2] The government presented evidence at trial that Fawaz and Safiedine each negotiated at least one of the Sunoco checks.

3

the next 13 months, Fawaz and Safiedine signed four checks from Sunoco over to Kassabri to pay debts owed by Safiedine's various companies and instructed Kassabri to forward other portions of the payments to other individuals.

In September 1999, Safiedine agreed to sell property located at 25815 Joy Road, Dearborn Heights, Michigan (the "Joy Road station"), to Ali Awada, who operated the gas station located on the property; MTK & KLC owned the real property, but there is no evidence the other partners in MTK & KLC were involved in the transaction. Safiedine and Awada agreed on a sale price of $875,000. Fawaz appeared at the September 30, 1999 closing on behalf of MTK & KLC, and signed a notarized warranty deed conveying the property to Awada for $875,000. Awada signed a buyer's settlement statement noting the price was $875,000, and the parties' closing company confirmed state and local property transfer taxes were assessed based on a purchase price of $875,000.

Awada testified he was unable to pay the entire price at closing and negotiated an alternate payment agreement. Awada secured a $652,000 mortgage loan, agreed to forgive a $105,000 debt Safiedine owed him from a separate business venture, waived his claims to the security deposit and prepaid rent on the Joy Road station in the amount of $31,500, and paid $35,000 in cash to Safiedine and $50,000 in cash to Fawaz, for a total of $873,500. Closing was extended until October 13, 1999, to permit these arrangements to be finalized and payment to occur. On October 13, the closing company received a revised seller's statement, which Fawaz endorsed, indicating Awada produced over $240,000 in earnest money; the original closing documents provided for only $50,000 in earnest money.

In April 2000, Safiedine and Fawaz asked Awada to sign a written statement indicating he purchased the Joy Road station for $700,000; Safiedine told Awada he wanted to prove to his

4

business partners that this was the amount he received for the property. Awada testified he signed the document despite knowing it was not the true price. Cohen, who also prepared the tax returns for MTK & KLC, reported $700,000 as the sale price of the Joy Road station on the partnership's tax return. Awada also testified Fawaz and Safiedine asked him to say he purchased the Joy Road station for $700,000 if he was contacted by government investigators and to explain the other $175,000 was used to pay for replacement of the gas pumps and other expenses, but that he told them he would not do so. According to Awada, during the meeting, Fawaz looked at the ceiling and stated the purchase price was $700,000, but Awada did not understand the apparent significance of her conduct until later.

On September 14, 2011, a jury found Fawaz and Safiedine guilty of conspiracy in violation of § 371. Fawaz and Safiedine filed motions for judgment of acquittal or, in the alternative, for a new trial, which the trial court denied on June 7, 2012. On July 19, 2012, the trial court also denied the defendants' motions for reconsideration of the trial court's order denying their earlier motions for judgment of acquittal or for a new trial. Following a sentencing hearing at which Fawaz and Safiedine presented expert testimony in support of a lower guideline range and sentence, the district court sentenced Safiedine to 21 months imprisonment and Fawaz to a term of 12 months and 1 day. The district court entered the judgment on sentencing on October 22, 2012. This appeal followed.

## ANALYSIS

### SUFFICIENCY OF THE EVIDENCE

We review a district court's denial of a Rule 29 motion for judgment of acquittal *de novo*. *United States v. McGee*, 529 F.3d 691, 696 (6th Cir. 2008) (*quoting United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003)). We must draw all factual inferences in the light most favorable to

the jury's verdict and, in order to reverse, we must determine no rational juror could have concluded the defendant was guilty beyond a reasonable doubt on the evidence presented. *Id.*

At trial, "the government was required to prove beyond a reasonable doubt (1) that two or more persons conspired to interfere with the lawful function of the IRS in collecting taxes at or about the time alleged, (2) that the defendant willfully joined the conspiracy, (3) that one or more coconspirators did at least one of the overt acts described in the indictment, and (4) that the overt act was done in furtherance of the conspiracy." *United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011). The existence of a criminal conspiracy need not be proven by direct evidence; "a common plan may be inferred from circumstantial evidence. . . . [Furthermore], once the government has established a conspiracy, only slight evidence is necessary to implicate a defendant." *United States v. Branham*, 97 F.3d 835, 854 (6th Cir. 1996) (internal citations and quotation marks omitted).

Fawaz argues the evidence is insufficient to establish (1) the existence of an agreement to defraud the IRS, (2) she knew of or intended to join the conspiracy, or (3) she committed an overt act in furtherance of the conspiracy.

As the district court noted in denying Fawaz's motion for a judgment of acquittal, the government introduced evidence that Fawaz and Safiedine twice approached Awada to seek his cooperation in concealing the amount of the Joy Road station purchase price, first from Safiedine's business partner and then from any government investigators who contacted Awada about the transaction. Further, after Cohen told Fawaz and Safiedine that JSC needed to report the Sunoco upfront consideration payments as income, Fawaz and Safiedine continued to negotiate the checks to third parties rather than depositing them in JSC's bank account. Combined with testimony establishing that JSC underreported the sale price of the Joy Road station on its tax return by $175,000 and that Fawaz knew Cohen determined JSC's corporate income by examining JSC's bank

6

statements, and viewed in a light most favorable to the prosecution, a rational juror could conclude beyond a reasonable doubt Fawaz knew of and intended to participate with Safiedine in a tacit agreement to interfere with the lawful functions of the IRS.

Further, Fawaz's repeated contentions that she only was following Safiedine's instructions, and thus did not commit an overt act intended to further the conspiracy,[3] do not insulate her from criminal culpability. *See Susnjar v. United States*, 27 F.2d 223, 224 (6th Cir. 1928) ("An employee is not immune from punishment for [her] participation in criminal conspiracy upon any such idea as that [her] employment required [her] to engage therein."). The fact that Safiedine, and not Fawaz, had final approval over checks issued or expenses incurred by Safiedine's businesses does not support a conclusion that Fawaz did not understand the implications of continuing to negotiate the Sunoco upfront consideration payments to third parties in disregard of Cohen's admonition regarding the need to pay taxes on those funds, or of asking Awada to sign a falsified statement of the Joy Road station sales price. Fawaz has failed to carry her burden of demonstrating that a rational juror, when viewing the evidence produced at trial in a light most favorable to the jury's verdict, could not have concluded the government proved the elements of a *Klein* conspiracy beyond a reasonable doubt. Accordingly, we affirm the district court's denial of Fawaz's Rule 29 motion.

**SENTENCING GUIDELINES**

Sentencing Guideline § 2T1.9 applies to violations of § 371. The base offense level is the greater of the offense level as determined by § 2T1.1 or § 2T1.4, or offense level 10. U.S.S.G. §

---

[3]   As the district court correctly noted, "an overt act in furtherance of a conspiracy need not be illegal itself." *United States v. Safiedine et al.*, No. 08-20148-2, 2012 WL 2054837, at *5 (E.D. Mich., June 7, 2012) (*quoting United States v. Jerkins*, 871 F.2d 598, 602-03 (6th Cir. 1989)). Evidence that Fawaz personally negotiated at least one of the Sunoco checks to a third party, even though the act itself is not illegal, is sufficient to support a rational juror's conclusion that the overt act element of the *Klein* conspiracy charge was satisfied.

7

2T1.9(a). Guideline § 2T1.1 calculates the base offense level through specified monetary ranges in Guideline § 2T4.1. U.S.S.G. § 2T1.1(a). For the purposes of Guideline § 2T1.1, "[i]f the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1). "If the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income . . . unless a more accurate determination of the tax loss can be made." U.S.S.G. § 2T1.1(c)(1)(n.(A)).

At the sentencing hearing, Safiedine and Fawaz objected to the probation officer's conclusion that JSC underreported its income by $1,020,000[4] and estimation of the tax loss as $285,600 pursuant to the 28% default tax rate included in Guideline § 2T1.1(c)(1)(n.(A)). The probation officer's conclusions led to her recommendation that the court determine the appropriate base offense level was 18. At the sentencing hearing, Fawaz and Safiedine presented expert testimony from Michael Washenko, a private forensic accountant who previously worked 34 years for the IRS, in part assisting in investigations similar to the investigation of Safiedine and Fawaz. Washenko testified that the government did not actually incur a tax loss as a result of the underreported income and sales price of the Joy Road station; rather, Washenko testified Safiedine actually overpaid his taxes because he did not claim business expense deductions related to the payments Safiedine made in signing the Sunoco checks over to third parties.

The district court did not conclude the amount of the tax loss should be adjusted by the deductions to which Safiedine asserted he was entitled and, after concluding some of the income

---

[4] This total includes $175,000 from the sale of the Joy Road station and $845,000 from unreported Sunoco upfront consideration payments.

8

from the Sunoco payments had been reported on the tax return of another of Safiedine's businesses, applied the default 28% tax rate from Guideline § 2T1.1(c)(1)(n.(A)) to the unreported income and the 20% capital gains rate to the unreported balance of the Joy Road station sale price. After adding these estimates together, the district court determined the total loss was $193,200. Accordingly, the district court concluded the appropriate base offense level was 16, rather than 18 as the probation officer initially concluded, and that both defendants were Criminal History Category I. Therefore, the advisory guideline range for both defendants was 21 to 27 months. The district court then sentenced Safiedine to 21 months imprisonment and Fawaz to 12 months and 1 day imprisonment.

On May 6, 2013, the United States Sentencing Commission submitted proposed amendments to the Application Notes in the Commentary for Guideline § 2T1.1 to Congress. Amendments to U.S.S.G. § 2T1.1 Application Notes, 78 Fed. Reg. 26, 429 (May 6, 2013). Those amendments instruct courts, in determining the tax loss, to "account for the standard deduction and personal and dependent exemptions to which the defendant [is] entitled . . . [as well as] account for any unclaimed credit, deduction, or exemption that is needed to ensure a reasonable estimate of the tax loss" within several specified restrictions. Id. The Sentencing Commission promulgated the amendment in response to a conflict among the federal courts of appeal "regarding whether a sentencing court, in calculating tax loss as defined in §2T1.1 . . . may consider previously unclaimed credits, deductions, and exemptions that the defendant legitimately could have claimed if he or she had filed an accurate tax return." Id. at 26, 430.

Those amendments took effect on November 1, 2013. The parties dispute whether the amendments are clarifying and thus retroactively applicable or substantive and thus only prospectively applicable. "This court has consistently recognized that clarifying amendments may be applied retroactively to discern the Sentencing Commission's intent regarding the application of

9

a pre-amendment guideline." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007). On remand, the district court should consider whether the amendment is clarifying or substantive and, if clarifying, determine whether the defendants have established any unclaimed credit, deduction, or exemption by a preponderance of the evidence. *See* 78 Fed. Reg. 26, 429-30 at 27.

## CONCLUSION

For the reasons stated above, we affirm the district court's denial of Fawaz's Rule 29 motion, vacate the sentences of Fawaz and Safiedine, and remand to the district court for proceedings consistent with this opinion.