NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0247n.06

No. 19-1329

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 04, 2020
DEBORAH S. HUNT, Clerk

AUBREY LYONS, )
      Plaintiff-Appellant, )
  )
v. )
  )
MICHIGAN DEPARTMENT OF CORRECTIONS, )
et al., )
      Defendants-Appellees. )
  )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

---

BEFORE: SILER, GIBBONS, and THAPAR, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Aubrey Lyons, an African American correctional officer with the Michigan Department of Corrections ("MDOC"), appeals the district court's grant of summary judgment to MDOC on his Title VII disparate treatment and retaliation claims. Lyons claims MDOC issued him a one-day suspension for being inattentive to duty, while it did not discipline similarly situated white officers. Moreover, he claims his MDOC supervisors issued that discipline in retaliation for several discrimination complaints Lyons previously filed against MDOC.

First, Lyons failed to establish a prima facie case of disparate treatment. He forfeited his argument that his one-day suspension, which was eventually reduced to a written reprimand, constituted an adverse employment action by failing to raise it in his opening brief. Second, Lyons failed to establish a prima facie case of retaliation. He did not demonstrate that the decision maker who issued his one-day suspension for being inattentive to duty knew about his discrimination

complaints, and Lyons forfeited his "cat's paw" theory of liability by not raising it before the district court. Therefore, we affirm.

I.

Aubrey Lyons is an African American correctional officer employed by MDOC since 1997. After being transferred in 2012 to the Macomb Correctional Facility ("Macomb"), Lyons allegedly began to experience various incidents of discrimination by his white supervisors.

Lyons filed his first internal discrimination complaint against MDOC in January 2015 in response to MDOC's disciplining him for violating its computer use policies. Lyons claimed the white investigating lieutenant, James Webster, "singled [him] out" by monitoring his computer activity but not the activity of white staff. DE 34-5, Discriminatory Harassment Reporting Form Jan. 12, 2015, PageID 699. In his deposition, Lyons testified that other officers came to know about his complaint against Webster, as it was "common knowledge." DE 31-1, Lyons Dep., PageID 306; DE 34-4, Lyons Dep., PageID 664, 684.

In August 2015, Lyons filed another internal discrimination complaint against MDOC, this time regarding disparate treatment at a gun range. Lyons's white supervisor, Sergeant Robert Loxton, denied Lyons use of the gun range for recertification while Loxton, around the same time, allowed a white officer immediate use of the range. MDOC's subsequent investigation concluded that the incident was not racially motivated but rather a result of Loxton's poor communication. In October 2015, Lyons filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the gun range incident.[1]

Lyons presents some evidence that other officers, particularly Captain Dale Holcomb and Lieutenant Gary Kelly, knew about his complaints. Holcomb testified that he did not have "first-

---

[1] The EEOC dismissed the charge, allowing Lyons to file suit in court.

hand knowledge" of Lyons's complaints, but he heard "scuttle or rumor[s]" regarding discrimination complaints generally. DE 34-7, Holcomb Dep., PageID 735. Holcomb and Kelly were also friends with Loxton.

On December 18, 2015, Holcomb referred Lyons for investigation for being inattentive to duty earlier that morning, a Work Rule 32 violation. Holcomb and Kelly were conducting their rounds when, at 2:53 a.m., they observed Lyons sitting in a guard shack "with his eyes closed, motionless[,] and his head down." DE 31-11, Attention to Duty Discipline Apr. 20, 2016, PageID 544, 548. "Kelly walked up to the yard shack, looked in," and knocked "before [Lyons] lifted his head up." *Id.* at 545. Lyons concedes that his head was down when Kelly and Holcomb approached, but claims he was adjusting his radio. Given that it was dark inside the shack, Lyons acknowledged that Kelly "may have thought [he] was inattentive." *Id.* at 552. Lyons's disciplinary report stated that he was "observed on video" with his eyes closed and head down. *Id.* at 537. Soon after the incident, on January 7, 2016, Lyons filed an EEOC complaint alleging that he was being retaliated against for filing discrimination complaints.

Following an investigation into the guard shack incident, MDOC Discipline Coordinator Jennifer Nanasy issued Lyons a one-day suspension on May 18, 2016, for being inattentive to duty. Nanasy said that she relied on Kelly's and Holcomb's representations as well as the video evidence to conclude by a preponderance of evidence that Lyons was inattentive. She noted, however, that the video footage was too dark to show details of Lyons's positioning or his eyes, and that she "would take [Holcomb and Kelly] at their word." DE 34-9, Nanasy Dep., PageID 761–62. She did not ask Lyons any questions regarding his defense that he was looking down at his radio. After Lyons filed a grievance, the one-day suspension was reduced to written counseling approximately six months after it was issued.

The same night of Lyons's guard shack incident, around 3:25 a.m., Holcomb and Kelly found a white correctional officer, Kurt Heinrich, similarly inattentive to duty. Holcomb and Kelly observed Heinrich sitting at a podium "with his head down, motionless, and with his eyes closed." DE 31-14, Heinrich Attention to Duty Discipline Mar. 9, 2016, PageID 562. During the initial part of the investigation, Heinrich called the accusations "petty" and expressed his belief that MDOC has a practice of finding a "token" white officer to discipline in order to avoid charges of racial discrimination, but he added that this was merely "speculat[ion]." *Id.* at 563. Heinrich, who had no prior discipline, subsequently admitted responsibility, entered a settlement agreement, and Nanasy issued him written counseling.

On April 25, 2017, Lyons filed a lawsuit alleging claims under Title VII and 42 U.S.C. § 1983. Under Title VII, Lyons brought claims of disparate treatment, retaliation, and hostile work environment against MDOC. He also alleged equal protection, substantive due process, free speech, and municipal liability claims under § 1983. The defendants moved for summary judgment. The district court heard argument on the motion and orally dismissed all of Lyons's claims except for his Title VII retaliation claim, which it later dismissed in a written order. Lyons filed a timely notice of appeal. On appeal, Lyons only challenges the district court's dismissals of his disparate treatment and retaliation claims stemming from the guard shack inattentive to duty incident.

II.

"We review a district court's grant of summary judgment de novo." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Summary judgment is proper where the record, viewed in the light most favorable to the nonmoving party, indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In employment discrimination cases without any direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2001).  Under this three-part framework, a plaintiff must first establish a prima facie case of discrimination, "which creates an inference of discrimination based on circumstantial evidence." *Seay*, 339 F.3d at 463.  The burden then shifts to the employer to offer some "legitimate, nondiscriminatory reason" for the adverse action.  *Id.* The plaintiff must then prove by a preponderance of evidence that the reasons the employer offers are pretext for discrimination.  *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). Lyons challenges the district court's ruling that he failed to establish a prima facie case for both his disparate treatment and retaliation claims.  For the following reasons, we affirm.

A.

To establish a prima facie case of disparate treatment in employee discipline, a plaintiff must demonstrate that:  "1) he is a member of a protected class; 2) [he] was qualified for the job; 3) he suffered an adverse employment decision; and 4) [he] was . . . treated differently than similarly situated non-protected employees." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (quoting *Newman*, 266 F.3d at 406).  The first two elements are not disputed.  The third and the fourth elements are disputed, but, on appeal, Lyons only challenges the district court's conclusion that he failed to satisfy the fourth element.  He points to white employees, including Heinrich, whom he alleges received lighter punishments for the same rule violation, as evidence

5

of similarly situated non-protected employees who were treated differently. We do not need to resolve this issue because we find that Lyons forfeited any argument regarding the third element—adverse employment decision—and therefore his disparate treatment claim fails.

Lyons failed to address the third element regarding an adverse employment decision in his opening brief because he erroneously assumed that the district court concluded in his favor on that element. The district court did not rule on whether Lyons suffered an adverse employment decision—it avoided the issue by deciding that Lyons failed on the fourth element. Lyons argues that the one-day suspension MDOC imposed for the guard shack incident (which was later reduced to a written reprimand) constitutes an adverse employment action, but on appeal he raises this argument for the first time in his reply brief.

Because Lyons did not argue that he suffered an adverse employment action in his opening brief, we conclude that Lyons forfeited the argument. *See United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002) (finding that a plaintiff forfeited an issue that he included in his reply brief but failed to raise in his original brief); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("[T]he appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in appellee's brief." (quoting *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989))). The defendants were not able to respond to the merits of the argument Lyons raised for the first time in his reply brief, and we decline to resolve this issue that was not fully briefed. Therefore, we affirm the district court's grant of summary judgment to MDOC on the disparate treatment claim.

B.

Lyons also challenges the district court's dismissal of his retaliation claim against MDOC for imposing discipline based on his inattention to duty. "Title VII prohibits discriminating against

6

an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014). The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims, first requiring the plaintiff to make a prima facie showing of retaliation. *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015). In order to establish a prima facie case of retaliation, a plaintiff needs to satisfy four elements: (1) the plaintiff engaged in legally protected activity; (2) the defendant knew about the plaintiff's protected activity; (3) the defendant then took an action materially adverse to the plaintiff; and (4) the protected activity and the adverse employment action were causally connected. *Laster*, 746 F.3d at 730; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The parties do not dispute the first and third elements. First, Lyons engaged in legally protected activity when he filed his various internal and EEOC discrimination complaints. *See Laster*, 746 F.3d at 730. Second, the one-day suspension Nanasy issued Lyons satisfied the low bar for a materially adverse action in the retaliation context because he presented evidence that such discipline on a correctional officer's record, even when later reduced to a written reprimand, makes transfers and other opportunities more difficult for the officer. *See Michael*, 496 F.3d at 595 (noting that "a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context" and "[a] materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'" (quoting *Burlington*, 548 U.S. at 67–68)). The district court found Lyons did not provide evidence of a prima facie case of retaliation because he did not satisfy the second element—that Nanasy knew about Lyons's protected conduct. The district court did not reach the causation element.

The district court correctly concluded that Lyons's retaliation claim fails because he did not present evidence that Nanasy, the final decision maker in Lyons's inattentive to duty discipline, knew about any of his discrimination complaints when she issued his one-day suspension. *See New Breed Logistics*, 783 F.3d at 1068–69 (assessing the knowledge element by considering whether the plaintiff showed evidence "that the relevant decision makers knew of any alleged protected activity when they took adverse action"). MDOC's general practice was to keep the identity of discrimination complainants confidential, and Nanasy testified at her deposition that she was unaware of Lyons's discrimination complaints. Her affidavit further provided that she was "neither friends nor acquainted with" any of Lyons's named supervisors who might have otherwise informed her of the complaints. DE 36-1, Nanasy Aff., PageID 804; *see also Hicks v. SSP Am., Inc.*, 490 F. App'x 781, 785 (6th Cir. 2012) ("Knowledge of a plaintiff's protected activity can be inferred from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." (quoting *Mulhall v. Ashcroft*, 287 F.3d 543, 553 (6th Cir. 2002))). Lyons does not rebut this evidence and therefore fails to create a dispute of fact as to Nanasy's knowledge of his protected activity. Without this knowledge, Lyons's protected activity could not have been the cause of Nanasy's decision to discipline him.

Lyons argues that, although Nanasy did not know of his protected activity, the "cat's paw" theory of liability salvages his claim.[2] "When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this [c]ourt has held that the employer may be held liable under a . . . 'cat's paw' theory of liability." *Arendale*, 519 F.3d at 604 n.13; *see also Roberts v. Principi*, 283 F.

---

[2] Lyons also cites to *Hopkins v. Michigan*, No. 17-12261, 2018 WL 6046166 (E.D. Mich. Nov. 19, 2018). There, the district court allowed an assumption that MDOC and the warden of the facility were aware of the EEOC complaint. *Id.* at *14. However, that case has no bearing here where the warden is not a defendant in the retaliation claim and there is no evidence that Nanasy knew about Lyons's discrimination complaints. Lyons's claims are distinguishable.

App'x 325, 333 (6th Cir. 2008) ("In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006))). Lyons argues that Holcomb and Kelly "took actions intended to cause the adverse employment action against [him]" by "launch[ing] an investigation against [him]" for being allegedly inattentive at duty and providing testimony in support of his discipline. CA6 R. 17, Appellant Br., at 25.

But Lyons raises this argument for the first time on appeal; he did not present it to the district court. Notably, Lyons completely failed to mention Nanasy in his discussion of the retaliation claim. An argument not raised before the district court is generally forfeited on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). We occasionally deviate from the general rule in exceptional circumstances or when failing to address the argument would produce a plain miscarriage of justice. *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993). In past cases, we have used the following factors to aid in determining whether to consider a forfeited claim:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (quoting *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)). Ultimately, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of

the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

We conclude that Lyons forfeited his cat's paw liability argument. None of the four factors compel addressing the merits of the argument for the first time on appeal, and the first two factors strongly weigh against doing so. The inquiry is largely fact-based, requiring this court to assess whether the defendants were motivated by retaliatory animus and determine whether Lyons has shown but-for causation. The resolution of this issue, moreover, is not clear or beyond doubt. *See Hayward*, 759 F.3d at 615 (declining to hear an issue not raised below, in part, because "it [was] not an issue for which resolution [was] clear beyond doubt"). Therefore, we find that Lyons failed to establish a prima facie case of retaliation.

## III.

Because Lyons forfeited essential arguments related to his disparate treatment and retaliation claims on appeal, we affirm the district court's dismissal of both claims.